HOWELL PLAZA, INC., Respondent, v. STATE HIGHWAY
COMMISSION, Appellant.

*No. 330.    Argued December 2, 1974.—Decided February 17, 1975.*
(Also reported in 226 N. W. 2d 185.)

For the appellant the cause was argued by *Charles A. Bleck,* assistant attorney general, with whom on the briefs was *Robert W. Warren,* attorney general.

For the respondent there was a brief by *Jeffrey S. Schuster* and *Hersh & Stupar, S. C.,* and oral argument by *Morton Gollin,* all of Milwaukee.

HEFFERNAN, J.   Howell Plaza, Inc., a shopping center corporation, petitioned the circuit court to order the State Highway Commission to proceed with the condemnation of the property of the Howell Plaza Corporation, which the petitioner claims has been "occupied" by the commission, but in respect to which it has not undertaken condemnation proceedings.  In response to the petition, the commission moved to dismiss because Howell Plaza

did "not state facts sufficient to constitute a cause of action or to bring said claim within the purview of ch. 32, Wis. Stats." The trial judge, correctly we believe, treated the motion to dismiss as a demurrer. He concluded that the facts alleged in the petition were sufficient to bring the underlying situation within the purview of sec. 32.10, Stats., the inverse condemnation law. The State Highway Commission has appealed from this order and also re-asserts its claim that the court was without jurisdiction over the defendant.

We hold that the trial judge correctly concluded that jurisdiction was properly obtained over the State Highway Commission. We conclude, however, that the petition failed to state a cause of action. The trial court's order must be reversed.

The petition seeks to invoke the procedure authorized under sec. 32.10, Stats. 1971, which provides:

"**32.10 Condemnation proceedings instituted by property owner.** Whenever any property has been occupied by a body possessing the power of condemnation but where such body has not exercised said power, the owner, if he desires to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced. Such petition shall describe the land, state the board, commission or corporation against which the condemnation proceedings are instituted and the use to which it has been put or is designed to have been put by the board, commission or corporation against which the proceedings are instituted. A copy of said petition shall be served upon the board, commission or corporation which has occupied petitioner's land, or interest in land. The petition shall be filed in the office of the clerk of the circuit court and thereupon the matter shall be deemed an action at law and at issue, with petitioner as plaintiff and the board, commission or corporation as defendant. The court shall thereupon make a finding of whether the defendant is occupying property of the plaintiff without having the right to do so. If the

court determines that the defendant is occupying such property of the plaintiff without having the right to do so, it shall treat the matter in accordance with the provisions contained in this chapter assuming the plaintiff has received from the defendant a jurisdictional offer and has failed to accept the same and assuming the plaintiff is not questioning the right of the defendant to condemn the property so occupied."

Additionally, art. I, sec. 13, of the Wisconsin Constitution is relevant, inasmuch as ch. 32 of the Wisconsin Statutes, Eminent Domain, is based upon the constitutional provision that "The property of no person shall be taken for public use without just compensation therefor."

In order for the petitioner to succeed in the initial stages of the inverse condemnation proceeding, it must allege facts that, prima facie at least, show there has been either an occupation of its property under sec. 32.10, Stats., or a taking, which must be compensated under the terms of the Wisconsin Constitution. Peripherally, the question of whether the petitioner has been deprived of its property without due process of law is also implicitly raised in the proceedings. Inasmuch as the matter before us is substantially a question raised on demurrer, the petitioner can only be said to have a cause of action if from the four corners of the complaint it can be ascertained that the facts which are assumed to be true show the conduct of the State Highway Commission would constitute either a taking or occupation of the petitioner's property.

The facts alleged are these:

"5. That for a considerable period of time, the defendant [State Highway Commission] has been engaged in a process of plotting, planning, and acquiring property in anticipation of public improvement for the construction of the Beltline Freeway system and that such acts have included:

"(a) Public proclamations for several years prior to 1969, by the defendant, about the proposed route of the freeway;

"(b) That there were statements prior to July 30, 1970, that acquisitions for construction of the Beltline Freeway would occur in early 1972;

"(c) That the defendant has negotiated with and acquired properties in the proposed freeway system;

"(d) That notice has been given to tenants, property owners and prospective owners and tenants of the imminence of condemnation;

"(e) That the defendant has had appraisals made of property within the district;

"(f) That announcements have been made that fair and just amounts of compensation would be paid for properties taken for the freeway system;

"(g) That the city fathers of Oak Creek, Wisconsin, at the insistence of the defendant, have urged the petitioner to forego any development of its property due to the imminence of the freeway system."

It is also alleged that the property owned by the petitioner lies within a corridor which the planners have designated for acquisition. Paragraph 7 states that, without the payment of just compensation, the commission "acquired" petitioner's property. We deem that the allegation in Paragraph 7 is a mere conclusion of law and does not constitute the allegation of an ultimate fact necessary to sustain the cause of action.

The petitioner further states that the acts by which the commission "acquired" the property were those listed in Paragraph 5 of the petition. Hence, only if it could be said that the facts alleged in Paragraph 5 are sufficient, if proved, to show a taking or occupation, can it be held that a cause of action has been stated under sec. 32.10, Stats.

In interpreting the provisions of the eminent domain chapter of the statutes and the constitutional definition of "taking," this court has strictly interpreted them to distinguish between the actual use or occupation by a

condemning authority and those hardships or incidents of the condemnation procedure that are only consequential to the exercise of the power of eminent domain. In a strong statement, a statement perhaps overly strong, this court in *Muscoda Bridge Co. v. Worden-Allen Co.* (1928), 196 Wis. 76, 88, 219 N. W. 428, strictly construed the constitutional and statutory provisions. The court said:

"It is only where those authorized to exercise the power of eminent domain are actually in the possession of and enjoying the use of property that the owner thereof is remitted to the proceedings under ch. 32."

At the time of the opinion in the *Muscoda Bridge Case,* the inverse condemnation provision now appearing as sec. 32.10, Stats., had already been incorporated into the law; and, hence, it seems clear that the court was dealing with a statute that was similar to the one before the court in the instant case.

In *More-Way North Corp. v. State Highway Comm.* (1969), 44 Wis. 2d 165, 169, 170 N. W. 2d 749, we pointed out that, in all proceedings brought under the power of eminent domain, there must be a "taking" before there can be a claim for just compensation. *More-Way* relies upon *Wisconsin Power & Light Co. v. Columbia County* (1958), 3 Wis. 2d 1, 87 N. W. 2d 279, wherein this court extensively discussed provisions that require compensation for a "taking." In the *Columbia County Case,* we said:

". . . mere consequential damage to property resulting from governmental action is not a taking thereof. Sec. 13, art. I, Wis. Const., like its equivalent in the federal constitution, 'does not undertake, . . . to socialize all losses, but only those which result from a taking of property.' *United States v. Willow River Co.,* 324 U. S. 499, 502, 65 Sup. Ct. 761, 89 L. Ed. 1101. Thus impairment of the value of plaintiff's farm by odors from a municipal sewerage-disposal plant is not a taking.

*Hasslinger v. Hartland,* 234 Wis. 201, 206, 290 N. W. 647. Nor is partial obstruction of ingress to and egress from plaintiff's property, and the view therefrom, by a municipal shelter a taking of the property. *Randall v. Milwaukee,* 212 Wis. 374, 382, 383, 249 N. W. 73. See also *State ex rel. Saveland P. H. Corp. v. Wieland,* 269 Wis. 262, 267, 69 N. W. (2d) 217. In this connection it is important to observe that while the constitutions of many states provide expressly that private property shall not be taken *or damaged* for public use without just compensation (2 Nichols, Eminent Domain (3d ed.), p. 324, sec. 6.44), that of Wisconsin provides only that 'the property of no person shall be *taken* for public use without just compensation therefor' (sec. 13, art. I, Wis. Const.) without mention of damage." (P. 6)

It is thus apparent that this court continues to rely upon a rather strict construction of the terms, "taking" or "occupying." On the other hand, we have held that, where a restriction had been placed upon the use of land that " 'practically or substantially renders the land useless for all reasonable purposes,' " a "taking" has occurred. *Just v. Marinette County* (1972), 56 Wis. 2d 7, 15, 201 N. W. 2d 761.

Under the recent cases, the absolute position set forth in the *Muscoda Case,* that there must be an actual physical occupation by the condemning authority, is not the only test of a "taking." There can be a "taking" if a restriction, short of an actual occupation, deprives the owner of all, or substantially all, of the beneficial use of his property. Even if such facts exist, however, there is no requirement of compensation if the restrictions may be justified under the exercise of the police power, as that power was explained in *Just.* It may well be that a substantial argument could be made that city or governmental planning which restricts the use of property for the public good is merely an exercise of the police power and in some cases is not compensable at all. However, in the instant case, that issue is not raised, and the State

Highway Commission's defense is simply that there has been no occupation or taking in the sense contemplated by the constitution or ch. 32, Stats.

From the face of the petition, it appears that the allegations, if proven true, show that the petitioner has been damaged to an undetermined extent by the conduct of the State Highway Commission and the public authorities as a result of the planning and preliminary work on the proposed highway. The statements, however, that the property "has lost any value whatsoever" and that the conduct of the commission has rendered the petitioner's property "unfit for any purpose" are mere conclusions of law and are not supported by the allegations of Paragraph 5.

We accordingly conclude that, under the constitution of the state of Wisconsin and under the statutes relied upon, there has not been an occupation or taking of the property as the statutory and constitutional provisions have been interpreted by this court. Nevertheless, we find the position of the trial judge highly persuasive. He points out that there may be a fundamental unfairness in permitting a public agency to deal with private property owners in such a way that they cannot make the optimum and normal use of their property because a public condemnation authority is threatening to acquire the land by the power of eminent domain but delays a compensable taking for a long period of time. In the instant case, the petition indicates that the property owner herein has been under the threat of condemnation for "several years prior to 1969."

The trial judge discussed this problem, stating:

"The advance planning necessary for public improvements often results in postponements and delays in condemnation proceedings. Long periods of time lapse between the initiation of a project and the actual award of compensation to the property owner. As this delay con-

tinues, property values in the area set off for the public improvement sometimes rapidly depreciate, because the tenants relocate in other areas and property owners are reluctant to spend money on repairs. There can be a substantial loss of financial return from such property, while the cost of its maintenance continues. Such effects of proposed public improvements are called condemnation blight. The law of eminent domain has found this a difficult problem to resolve."

Long delays in actually acquiring property after the public improvements have been announced can result in substantial hardship to property owners, for which they ought in justice to receive compensation. We have no doubt that there can be a cause of action for inverse condemnation if the facts alleged are sufficient to show that property owners so situated have been deprived of all, or substantially all, of the beneficial use of their property. The petition in the instant case, however, does not allege facts sufficient to state that cause of action.

The commission correctly points out that the laying out of a highway corridor is a legislative function and that the planning or plotting of a highway or the selection of a proposed highway corridor is merely a step in public planning which is subject to the cost of the acquisition of property, the obtaining of financing, and the resolution of questions of practicality in terms of state and federal highway requirements. Planning of a highway or other public improvement to be constructed in the future ought not result in a public authority's loss of control of the power to decide whether it will in fact proceed with a project.

The determination to proceed with the planned project is a matter for the legislature or its agent, the highway commission, to which the legislative function has been delegated. If this court countenances suits for inverse condemnation and permits the award of damages—in effect by decree transfers property to a condemning au-

thority before the project is finally decided on—private citizens claiming they have been damaged by a threatened taking will in effect have pre-empted the legislative function. The decision to acquire the property in a highway corridor tentatively proposed will be transferred to private citizens rather than made by the commission, which has been entrusted with this responsibility. For the courts to step in prematurely would preclude long-range governmental planning. The mere initiation of a plan, if we uphold the cause of action stated here, would trigger a compulsion to proceed with the acquisition of the property.

Some courts have concluded that allegations similar to those set forth by the petition here, if proved, constitute a taking. In *Commonwealth's Crosstown Expressway Appeal* (1971), 3 Pa. C. 1, 3, 281 Atl. 2d 909, 910, the court upheld a pleading as stating a cause of action which recited:

"The acts and activity of the Commonwealth beginning in September 1967 alleged to constitute compensable injury to his property, and thus a *de facto* condemnation, consist of public proclamations of the proposed route; public statements of the imminence of condemnation which would probably occur on or before December 1, 1968; negotiating for and amicably acquiring properties within the proposed route; notice to tenants and owners of properties of the imminence of condemnation including tenants and prospective tenants of the petitioner's premises; appraisal activity; public announcements that just compensation would be paid to condemnees; and the urging of the City of Philadelphia to impede private development of properties within the proposed route and to approve the project. Also specifically averred is the loss of tenants by the property owner and his inability to find new tenants by reason of these acts and activity of the Commonwealth."

Under the law of Wisconsin as interpreted by this court, we would conclude that the allegations accepted by

the Pennsylvania court would be insufficient to state a cause of action. We conclude that there need not be an actual taking in the sense that there be a physical occupation or possession by the condemning authority, and to that extent we modify the rule stated in *Muscoda Bridge Co. v. Worden-Allen Co., supra.* We hold that, to state a cause of action in the absence of actual possession or occupation, an allegation for inverse condemnation under sec. 32.10, Stats., will be sufficient only if the facts alleged show that the property owner has been deprived of all, or practically all, of the beneficial use of his property or of any part thereof.

Accordingly, the order overruling the motion to dismiss is reversed, and the cause is remanded for further proceedings, with the petitioner having the option to plead over within twenty days after the return of the record to the trial court.

We have examined the contention of the highway commission that no jurisdiction was acquired by the petitioner, because the proceeding brought was a suit to which the state had not given its consent. We find that contention to be without merit. *Konrad v. State* (1958), 4 Wis. 2d 532, 536, 91 N. W. 2d 203.

*By the Court.*—Order reversed, and cause remanded for further proceedings not inconsistent with this opinion.