Alfred A. ZEALY, Plaintiff-Appellant,

v.

CITY OF WAUKESHA, Defendant-Respondent.†

Court of Appeals

*No. 93–2831. Oral argument January 24, 1995.—Decided May 17, 1995.*

(Also reported in 534 N.W.2d 917.)

†Petition to review granted.

701

702

703

On behalf of the plaintiff-appellant, there were briefs and oral argument by *James W. Hammes* of *Cramer, Multhauf & Hammes* of Waukesha.

On behalf of the defendant-respondent, there was a brief and oral argument by *Karen A. Macherey*, assistant city attorney.

There was an amicus brief by James E. Doyle, attorney general; John S. Greene, assistant attorney general; and Kathleen M. Falk, Wisconsin Public Intervenor. There was oral argument by JoAnne F. Kloppenburg, assistant attorney general, and Kathleen M. Falk, Wisconsin Public Intervenor.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J. The dispute here concerns how courts should measure compensation to a landowner when the government reclassifies a portion of the landowner's parcel as conservancy in order to protect diminishing wetlands. The challenging landowner in this case primarily claims that when part of a parcel's zoning classification is changed to conservancy, the courts should treat that portion as though it has been constructively taken and the government should pay accordingly. The government responds that a taking

does not occur when a zoning reclassification restricts the use of only a portion of the parcel if the parcel as a whole retains substantial value. For reasons hereafter explained, we reject both arguments and hold that compensation depends upon a case-by-case analysis of the landowner's reasonably anticipated use of the property. Since this test differs from the law declared by the trial court, we reverse for a new trial consistent with the analysis in this opinion.

The challenging landowner is Alfred A. Zealy. He owns a 10.1 acre parcel in the City of Waukesha. When the land was annexed by the City in 1967, it was classified R-1 residential. Later, a small portion of the land was upgraded to the B-4 business classification. In 1982, Zealy granted the City an easement allowing the municipality to place storm and sanitary sewers on a portion of his property. He alleges that he granted the easement because city officials led him to believe it would expedite future residential development by providing easier hookup to the water system. Three years later, however, the City rezoned 8.2 acres of the R-1 property to C-1 conservation. The change effectively precluded further development on this subparcel. Based on a 1990 appraisal, Zealy alleges that the subparcel value has been reduced from $200,000 to $4000, a ninety-nine percent devaluation. He concedes, however, that when all 10.1 acres are viewed together, the effect of the zoning change is not severe enough to support a constructive taking claim because of the value of his commercial property.

The trial court dismissed Zealy's inverse condemnation action brought pursuant to § 32.10, STATS., as well as his claim of estoppel. The trial court viewed the applicable law to be that parcels may not be segmented for purposes of constructive taking law. Zealy seeks

review of these two issues addressed by the trial court. First, he alleges that the City took the 8.2 acres of his land when it promulgated a zoning change resulting in a loss of almost all of its economic value.[1] This claim rests on a line of cases in which state regulation resulting in a substantial devaluation of privately held property was found to be a taking requiring just compensation. *See, e.g., State v. Herwig,* 17 Wis. 2d 442, 117 N.W.2d 335 (1962).[2] In his second claim, Zealy asserts the City should be equitably estopped from enforcing the 1985 zoning change because he relied upon representations made by the City that he could use the 8.2 acres for residential development. *See, e.g., State ex rel. Schroedel v. Pagels,* 257 Wis. 376, 43 N.W.2d 349 (1950). The City disputes his claims and the state attorney general and the public intervenor

---

[1] An inverse condemnation action brought pursuant to § 32.10, STATS., enables a landowner to challenge a legal restraint imposed by a government authority in instances when the government has not invoked its power of eminent domain. *See Howell Plaza, Inc. v. State Highway Comm'n,* 92 Wis. 2d 74, 88, 284 N.W.2d 887, 893 (1979) ( *Howell Plaza II*); *Reel Enters. v. City of La Crosse,* 146 Wis. 2d 662, 670-71, 431 N.W.2d 743, 747 (Ct. App. 1988).

[2] *State v. Herwig,* 17 Wis. 2d 442, 117 N.W.2d 335 (1962), is an illustration of how constructive takings law can provide relief for private landowners affected by burdensome government regulations. In *Herwig,* the supreme court found that the state's designation of a waterfowl preserve on farmland surrounding a public lake constituted a constructive taking. *Id.* at 444-47, 450, 117 N.W.2d at 337-38, 340. The state had failed to provide the wild birds in the preservation area with food, and they apparently began to feed on the farmer's corn, alfalfa and rye. Thus, the state was found to have appropriated the owner's property for a public use without compensation. *See id.* at 450, 117 N.W.2d at 340.

have jointly submitted an amicus brief, siding with the City.

We will first address the appropriate standard of review. With regard to the constructive taking claim, the central issue is whether government regulation has rendered the property practically useless for all reasonable purposes. *See Howell Plaza, Inc. v. State Highway Comm'n*, 92 Wis. 2d 74, 85, 284 N.W.2d 887, 892 (1979) (*Howell Plaza II*). This is a question of law which is reviewed de novo. *See Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 111 Wis. 2d 326, 330, 330 N.W.2d 232, 234 (Ct. App. 1983), *rev'd on other grounds*, 116 Wis. 2d 206, 341 N.W.2d 689 (1984). Similarly, Zealy's claim for relief through application of equitable estoppel is a question of law subject to de novo review. *Cf. Quinnell's Septic & Well Serv., Inc. v. Dehmlow*, 152 Wis. 2d 313, 316, 448 N.W.2d 16, 17 (Ct. App. 1989) (claim of unjust enrichment presents a question of law reviewed de novo).

The Fifth Amendment commands the government to pay for private property when it converts it to public use. This compels the state to act rationally when it reallocates private resources to the general public. *See Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922); *see also Just v. Marinette County*, 56 Wis. 2d 7, 23, 201 N.W.2d 761, 771 (1972). The government, however, also has a duty to protect the public from the destructive use of land by individual citizens. *See Pennsylvania Coal*, 260 U.S. at 413. Takings law requires courts to balance these two competing policies.

Thus far, two lines of analysis have emerged. If the state acquires the sum total of the legal rights to any

component of privately held property, then it must compensate. For instance, in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), the state authority was required to reimburse the aggrieved landlords even though only 1.5 cubic feet of their apartment buildings had been usurped for public use. *See id.* at 438 n.16, 441; *see also Zinn v. State*, 112 Wis. 2d 417, 422, 437-38, 334 N.W.2d 67, 69, 77 (1983) (two-year acquisition of legal title to property requires compensation). The second line of analysis, which is at issue in the present case, reflects an understanding that by intensive regulation the government may render private property effectively useless even though legal title remains in the hands of the citizen. *See Lucas v. South Carolina Coastal Council*, 505 U.S., 112 S. Ct. 2886, 2893 (1992); *Just v. Marinette County*, 56 Wis. 2d 7, 201 N.W.2d 761 (1972).[3] These claims are commonly referred to as constructive takings.

---

[3] At oral argument, Zealy suggested that there may be a difference between Wisconsin and federal takings law. This issue, however, was not briefed by any of the parties. Of course, the Fifth and Fourteenth Amendments set the minimum standards for the protection of private property against intrusions by the State of Wisconsin. *See Chicago, B. & Q. R.R. v. City of Chicago*, 166 U.S. 226, 236 (1897). This state, nevertheless, could provide even greater protection to its citizens than that afforded by the Constitution. The cases we have examined indicate, however, that there is no difference. *See, e.g., Bino v. City of Hurley*, 273 Wis. 10, 22, 76 N.W.2d 571, 578 (1956); cf. *Pumpelly v. Green Bay & Miss. Canal Co.*, 80 U.S. (13 Wall.) 166, 176-77 (1872) (noting textual similarities between United States and Wisconsin Constitutions); *Howell Plaza, Inc. v. State Highway Comm'n*, 66 Wis. 2d 720, 725-26, 226 N.W.2d 185, 188 (1975) ( *Howell Plaza I*) (discussing textual differences between Wisconsin and other state constitutions). We recognize, as the public intervenor explained at oral argument, that

As the United States Supreme Court recently explained in *Concrete Pipe and Prods., Inc. v. Construction Laborers Pension Trust*, 508 U.S. —, —, 113 S. Ct. 2264, 2290 (1993), three factors have emerged as guideposts for courts to employ in this second type of takings analysis.[4] The factors are: (1) the nature of the government regulatory scheme, (2) the severity of the economic impact on the challenging landowner and (3) the degree of interference with the landowner's anticipated and distinct investment opportunities. *See id.* at —, 113 S. Ct. at 2289-92. The first factor focuses on the nature of the land use regulation at issue. In *Lucas*, the Supreme Court appeared to set forth a new manner of gauging the reasonableness of government activity in

there are differences in the terminology used among the courts. *Compare M&I Marshall & Ilsley Bank v. Town of Somers*, 141 Wis. 2d 271, 286, 414 N.W.2d 824, 830 (1987) ("constructive taking") *with Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987) ("regulatory taking"); *compare Zinn v. State*, 112 Wis. 2d 417, 424, 334 N.W.2d 67, 70 (1983) ("all, or substantially all, of the beneficial use") *with Lucas v. South Carolina Coastal Council*, 505 U.S. —, 112 S. Ct. 2886, 2894 n.7 (1992) ("deprivation of all economically feasible use"). Nonetheless, these variations are not substantive.

[4] At oral argument, Zealy suggested that this court should adopt a three-part test for analyzing whether a constructive taking has occurred. First, the purpose of the regulation should be considered. Next, the intent of the public authority must be analyzed. Finally, the effects of the regulation on the affected landowner must be ascertained. This suggestion appears to be a fair means of describing the factors that should be relied upon by a court to resolve a constructive taking question. This proposed test, however, does not provide a clear indication of how the reviewing court should segment, or characterize, the challenging landowner's property.

the land use arena. The Court held that a state's power to enact prescriptive land use controls may be rooted in established nuisance law. *Lucas*, 505 U.S. at —, 112 S. Ct. at 2901-02. The government can prohibit certain uses of land without compensation to affected landowners if such use has traditionally been curtailed by the common law of nuisance. *Id.*

Alternatively, a state may rely upon its police power to impose substantial restrictions on private land in order to promote the public interest in the efficient use of natural resources. In these circumstances, however, the government must compensate the private landowner if that landowner is unduly burdened by such regulation. Landowners become unduly burdened when their property is deprived of all, or substantially all, of its beneficial use. *See Concrete Pipe*, 508 U.S. at —, 113 S. Ct. at 2289-92; *Howell Plaza, Inc. v. State Highway Comm'n,* 66 Wis. 2d 720, 726, 226 N.W.2d 185, 188 (1975) (*Howell Plaza I*); *Reel Enters. v. City of La Crosse,* 146 Wis. 2d 662, 671, 431 N.W.2d 743, 747 (Ct. App. 1988).

Here, it is evident that the City's conservancy zoning, which is intended to protect existing wetlands, falls under this latter category of land use control. *See Just*, 56 Wis. 2d at 14-15, 201 N.W.2d at 767 (describing how Wisconsin wetlands regulations serve "the public interest in stopping the despoliation of natural resources"). In fact, it appears that Zealy and the City agree that such is the case. The determination of whether there has been a constructive taking of Zealy's property depends upon the application of the two remaining *Concrete Pipe* criteria.

The second guidepost gauges the severity of economic impact. We view this criterion to be nothing

711

more than proof from an appraiser that, on paper, the landowner has suffered a reduction in value from the property's highest and best use. Because of the underlying dispute in this case, however, resolution of this criterion cannot be easily determined. If, as Zealy contends, we should look to only that part of the property which has been zoned as a conservancy, then Zealy can presumably show a loss of $196,000. If, on the other hand, the whole parcel is examined, then Zealy cannot show any severity of economic impact due to the zoning change and the second criterion must be resolved against him. Thus, resolution of this case depends upon examination of the third guidepost.

To restate the third guidepost, we measure the degree of interference with the landowner's anticipated and distinct investment opportunities. This analysis entails a balancing between the public interest in efficient land use against the burden placed on the challenging landowner. Courts traditionally have required landowners to demonstrate that there has been a substantial impact on the actual use, or a reasonably anticipated use, of their land before finding that a taking has occurred. *See, e.g., Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 384-85 (1926) (seventy-five percent diminution in value of vacant property not a taking).

The rationale for this stringent burden is to prevent frivolous assertions by landowners. Without these requirements, every zoning change for conservancy purposes would provide an opportunity for the owner to bring a claim for compensation. Government would be crippled. *See Pennsylvania Coal,* 260 U.S. at 413 ("Government hardly could go on if, to some extent, values

incident to property could not be diminished without paying for every such change in the general law."). The third criterion, therefore, says that the landowner will not be compensated for something the landowner never thought he or she had. The criterion tells us that simply getting an appraisal on what the highest and best use of the property would have been is not enough. The landowner must show that the highest and best use was also an anticipated use.

On the other hand, if the landowner has an anticipated use taken away, then it may be that, despite the regulatory good which comes from conservancy, compensation must be made. The law recognizes that intensive regulation may render private property effectively useless even though legal title remains in the hands of the citizen. In *Pennsylvania Coal*, the Supreme Court warned: "The general rule, at least, is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Id.* at 415. The government goes too far when, according to *Concrete Pipe*, an anticipated investment is taken away.

The criterion which explores anticipated investment takes on special importance when a landowner alleges, as Zealy does here, that only a portion of the property should be considered in the takings analysis. The question is, always: Is the nonaffected part of the parcel *relevant* to the anticipated use of the affected parcel? If the answer to that question is "yes," then the whole parcel should be considered in determining whether there has been a taking. If the answer is "no," then only the anticipated investment opportunity of the affected parcel should be considered.

We come to this conclusion after reviewing a case cited to us by the City, *Ciampitti v. United States*, 22 Cl. Ct. 310 (1991). There, the challenging landowner claimed that the Army Corps of Engineers' decision to deny him a landfill permit in a wetlands area constituted a taking of his property. He claimed compensation for the losses stemming from his inability to develop several residential properties. In defending the claim, the government pointed to other parts of the landowner's original purchase that had been successfully developed. *Id.* at 318-20. The court agreed that in these circumstances, the additional lands should be included in the analysis. *Id.* The *Ciampitti* court relied on a variety of factors to determine whether the property adjacent to the affected lands could be considered in the calculus. The court noted:

> Factors such as the degree of contiguity, the dates of acquisition, the extent to which the parcel has been treated as a single unit, the extent to which the protected lands enhance the value of the remaining lands, and no doubt many others would enter the calculus.

*Id.* at 318. In our view, these factors travel to whether that part of the parcel unaffected by regulation is relevant to the anticipated use of the affected part of the parcel. For example, a portion of the parcel that is very minimally contiguous to the affected parcel may not have been considered by the landowner to be part of the anticipated use of the remaining part. As well, the dates of acquisition and the circumstances of acquisition may well inform the court about how the landowner may have viewed the land. Additionally, the extent to which the rezoning of certain lands to a pro-

tected status actually enhances rather than harms the landowner's anticipated investment opportunity could demonstrably affect the calculus. For example, a residential parcel surrounded by conservancy lands might be more valuable than a parcel surrounded by other homes.

No doubt there are other factors which may be relevant. But we cannot underestimate the importance of analyzing a constructive taking by resort to the third *Concrete Pipe* criterion. It does away with bright-line rules favored by Zealy on the one hand (always segment the affected property)[5] and the trial court, the

---

[5] We reject Zealy's argument that the analysis in *Howell Plaza II* supports a conclusion that only the affected subparcel is considered in a constructive taking analysis. The plaintiff landowner in *Howell Plaza II* alleged that sixteen acres of a sixty-acre parcel had been constructively taken because a planned highway prevented it from developing the subparcel. *Howell Plaza II*, 92 Wis. 2d at 76-77, 284 N.W.2d at 888. Although in its first examination of the claim the supreme court concluded that such regulatory action could amount to a taking of the sixteen acres, *see Howell Plaza I*, 66 Wis. 2d at 729-30, 226 N.W.2d at 190, it rejected the landowner's second appeal because the landowner failed to demonstrate that it was unable to develop or sell any component of the property, *see Howell Plaza II*, 92 Wis. 2d at 84, 284 N.W.2d at 891-92. The court placed great emphasis on how the landowner had withheld development on all but ten or eleven of the sixty acres. *Id.* at 76, 84, 284 N.W.2d at 888, 892. This suggested that the plaintiff recognized that the risk of loss from the sixteen acres was offset by the potential value of the remaining forty-four acres which would then be proximate to the new freeway. *Id.* at 84, 284 N.W.2d at 892. The supreme court did not segment the subparcel because the owner was found to have treated its property as a single, contiguous development. We therefore conclude that the *Howell Plaza* cases are consistent with our analysis. *See*

City, the state and the public intervenor on the other hand (never segment the property).[6] The focus on anticipated use teaches us that sometimes the whole

*Reel Enters.*, 146 Wis. 2d at 671-72, 431 N.W.2d at 747-48 (similar interpretation of *Howell Plaza I & II*).

[6] For example, in the recent exploration of these issues in *Lucas*, Justice Scalia noted:

> The rhetorical force of . . . [the deprivation of all beneficial use] rule is greater than its precision, since the rule does not make clear the "property interest" against which the loss of value is to be measured. When, for example, a regulation requires a developer to leave 90% of a rural tract in its natural state, it is unclear whether we would analyze the situation as one in which the owner has been deprived of all . . . beneficial use of the burdened portion of the tract, or as one in which the owner has suffered a mere diminution in value of the tract as a whole.

*Lucas*, 505 U.S. at —, 112 S. Ct. at 2894 n.7.

Justice Scalia then went on to criticize the analysis applied by the Court in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978), which, as we read the case, held that the "bundle of rights" represented by private property ownership could not be segmented to demonstrate how government regulation had destroyed one of the elements and thus requires just compensation. Moreover, he appears to question the Court's application of this analysis in *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987), a holding that was relied upon by the trial court in this case. The City and the public intervenor, however, correctly noted in their briefs that the *Penn Central* and *Keystone* analysis was subsequently cited with approval in *Concrete Pipe and Prods., Inc. v. Construction Laborers Pension Trust*, 508 U.S. —, —, 113 S. Ct. 2264, 2290 (1993), an opinion in which Justice Scalia did not dissent. *See also Loveladies Harbor, Inc. v. United States*, 28 F.3d 1171, 1181 (Fed. Cir. 1994) (noting that courts have traditionally applied a "flexible approach" to address this issue).

We are of the opinion that when reading these cases together, the Supreme Court has not stated that courts may *never* segment. Rather, the courts should use a flexible

property must be considered and sometimes not. We prefer the type of undertaking used by the court in *Loveladies Harbor, Inc. v. United States,* 28 F.3d 1171 (Fed. Cir. 1994). There, the government expressed concern that bright-line rules regarding whether adjoining property is or is not considered would encourage strategic behavior on the part of developers who could divide the wetlands and nonwetlands portion of their holdings in order to better demonstrate how government regulation had constructively taken the nondevelopable parcel. *See id.* at 1181.[7] The court tackled this problem by engaging in a careful assessment of all the facts surrounding the landowner's acquisition of the property including the "timing of transfers in light of the developing regulatory environment." *Id.; see also Deltona Corp. v. United States,* 657 F.2d 1184, 1193 (Ct. Cl. 1981), *cert. denied,* 455 U.S. 1017 (1982) (noting that landowner knew at the time of purchase that special permits would be required to develop the parcel).

We believe that the concern of the government in *Loveladies* is valid and can be met by the same careful assessment of the facts as was conducted by the court in that case. We cite *Loveladies* to accent our belief that

---

approach. Nonsegmentation was found to be proper in *Keystone* and *Penn Central* based on the facts in those cases.

[7] For example, if a landowner knows that a wetlands restriction is imminent, dividing the wetland portions into separate and distinct parcels would seem to be a wise course. The landowner would be able to demonstrate a greater *percentage* devaluation because only the now undevelopable component would be in the denominator of the calculus. *See Lucas,* 505 U.S. at —, 112 S. Ct. at 2919 (Stevens, J., dissenting) ("The smaller the estate, the more likely that a regulatory change will effect a total taking.").

this case cannot be resolved simply by announcing a bright-line rule that parcels either can or cannot be separated for purposes of constructive taking analysis. Rather, the *Concrete Pipe* criteria—especially the third criterion—are the correct focal point upon which to make a record. Because this was not done at trial and because the trial court ruled against Zealy simply on the incorrect basis that the law requires the whole parcel to be factored, we reverse. We remand for a new trial at which time the parties may submit whatever evidence the court deems relevant to resolving the third *Concrete Pipe* criterion.[8]

We now turn to the second claim presented in this appeal, which involves the doctrine of equitable estoppel. We reach this issue because it is a separate and independent ground raised by Zealy. We reject this claim for the reasons that follow, but note that if we had accepted this claim, then there would have been no need to remand on the first issue. We now discuss this issue.

Zealy alleges that in 1982 the City promised him that if he granted an easement across his property, the City would not assess any charges on sewers which may be sited on the property and that the residential development of his property would be expedited. In

---

[8] The ultimate conclusion about whether there has been a constructive taking is an issue of law. *Mentzel v. City of Oshkosh*, 146 Wis. 2d 804, 808, 432 N.W.2d 609, 611 (Ct. App. 1988). We note, however, that the above analysis may require the trial court to reach conclusions over certain factual disputes, such as whether Zealy intended to pursue development on the parcel as a whole, or whether he believed that development of the subparcels would be pursued independently. Thus, constructive takings cases may involve mixed questions of law and fact. *See id.*

substance, he asks this court to enforce this agreement by ordering the City to withdraw the rezoning plan as it pertains to his property. The trial court dismissed this claim because it found that Zealy had failed to make "substantial expenditures" in reliance upon this agreement. While we agree with the trial court's ultimate conclusion, we find that it is supported by a different analysis.

The application of equitable estoppel in matters of land use regulation rests on a series of cases where courts have enjoined regulatory changes because a landowner had already acted upon the original ordinances. The landowner is described as having "vested rights" in the prior plan. *See State ex rel. Schroedel*, 257 Wis. at 383, 43 N.W.2d at 352. This claim involves a question of law subject to de novo review. *Cf. Quinnell's*, 152 Wis. 2d at 316, 448 N.W.2d at 17.

The City argues that these cases are inapplicable since Zealy has failed to present a factual basis for his assertion that he relied upon the original zoning classification. Zealy contends, however, that he granted the easement only for the purpose of expediting residential development. He argues that the dispute centers on the scope of the agreement and should be presented to a trier of fact.

Zealy's claim for relief based on equitable estoppel depends upon his proof that he relied upon the agreement with the City to his detriment. *See Mowers v. City of St. Francis*, 108 Wis. 2d 630, 633, 323 N.W.2d 157, 158 (Ct. App. 1982). However, even if the City entered into an agreement promising him that he could build a residential development on the disputed subparcel, there is no indication that the City's alleged breach has caused Zealy any loss since he has not established that

he took any affirmative steps towards residential development of the property.

Moreover, we find that this equitable estoppel analysis embodies, in substance, the same issues to be considered in Zealy's constructive taking claim. Both require proof that Zealy intended to develop the 8.2 acres for residential use. In the constructive taking analysis, it establishes what his reasonable expectations were about the subparcel, and in the equitable estoppel context, these facts would be required to demonstrate that he acted in reliance on the City's promise to his detriment.

The constructive taking claim, however, is his only means of seeking relief. Even if the City breached an agreement that earmarked the subparcel for residential development, a court could not order specific performance and make the City rezone the subparcel. The court cannot compel a political body to adhere to an agreement involving land use regulations when it has legitimate reasons for breaching. *See City of Milwaukee v. Leavitt*, 31 Wis. 2d 72, 76-77, 142 N.W.2d 169, 171-72 (1966); *State v. Sensenbrenner*, 262 Wis. 118, 124, 53 N.W.2d 773, 776 (1952) ("[T]he legislature cannot surrender or limit police powers of the state."). What this court *can* do is compel the government to compensate the landowner for any resulting loss. Thus, the issues surrounding the City's alleged promise are properly voiced as part of Zealy's constructive taking claim. The trial court's order dismissing this claim is therefore affirmed.

No costs awarded to either party.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.