212 Wis.2d 310 (1997)
569 N.W.2d 54
STATE of Wisconsin, Plaintiff-Appellant,[]
v.
KENOSHA COUNTY BOARD OF ADJUSTMENT, Defendant-Respondent.
No. 96-1235.
Court of Appeals of Wisconsin.
Oral argument February 19, 1997.
Decided July 9, 1997.
*311 On behalf of the plaintiff-appellant, the cause was submitted on the briefs of James E. Doyle, Attorney General, and Ann M. Zimmerman, Assistant Attorney General, with oral argument by Ann Zimmerman.
On behalf of the defendant-respondent, the cause was submitted on the brief and oral argument of Debra S. Bursinger, of Kenosha.
*312 Before Snyder, P.J., Brown and Nettesheim, JJ.
NETTESHEIM, J.
The State of Wisconsin appeals from a judgment upholding a variance granted by the Kenosha County Board of Adjustment to Janet Huntoon. The State contends that the Board proceeded on an incorrect theory of law as to what constitutes an "unnecessary hardship" for purposes of a variance request. The State also contends that the Board's decision is unreasonable because it is not supported by the evidence. We reject both of the State's arguments. We affirm the judgment upholding the grant of the variance.

FACTS
Janet Huntoon owns six adjoining parcels of land on Hooker Lake, a navigable body of water located in the Town of Salem, Kenosha County. Huntoon's residence stands on the only developed parcel. On March 24, 1995, Huntoon applied to the Board for a variance from the shoreland setback ordinance which requires a 75-foot setback for all structures adjacent to navigable bodies of water. Huntoon requested a variance for the construction of a 14 foot by 23 foot deck to be attached to the lake side of the home. The deck would reduce the existing 78-foot setback of the home to 64 feet, thus creating a structure in violation of the shoreland setback ordinance.
The Department of Natural Resources (DNR) reviewed Huntoon's request and wrote a letter to the Board recommending that Huntoon's request be denied. The DNR advised the Board that Huntoon could not meet the statutory standards for granting a variance because Huntoon could not show unnecessary hardship. The DNR additionally noted that the deck, if *313 built, would result in a nonconforming structure contrary to the intent of the shoreland zoning statutes and the public interest. Nevertheless, following a public hearing on May 4, 1995, the Board voted to grant Huntoon's variance request.
On June 5, 1995, the State initiated a certiorari review proceeding in the circuit court. On July 6, 1995, the Board held another public hearing to reconsider Huntoon's variance request.[1] At this hearing, the Board again approved the variance.
Based on the Board's July 6 decision, the State filed a second certiorari review action on July 31, 1995. The circuit court consolidated the two certiorari actions. In the circuit court, the State argued that the Board had proceeded on an incorrect theory of law and that the evidence did not support the Board's grant of the variance. The circuit court rejected these arguments and affirmed the Board's decision. The State appeals.

DISCUSSION
[1-4]
When conducting statutory certiorari judicial review, our standard of review of the circuit court's ruling is de novo. See Nielsen v. Waukesha County Bd. of Supervisors, 178 Wis. 2d 498, 511, 504 N.W.2d 621, 626 (Ct. App. 1993). Our review of a certiorari action is limited to determining: (1) whether the board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its *314 will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. See Klinger v. Oneida County, 149 Wis. 2d 838, 843, 440 N.W.2d 348, 350 (1989). We accord a presumption of correctness and validity to the decision of the board when reviewing a decision by statutory certiorari. See id. Thus, the board's findings will not be disturbed if any reasonable view of the evidence sustains them. See Snyder v. Waukesha County Zoning Bd. of Adjustment, 74 Wis. 2d 468, 476, 247 N.W.2d 98, 103 (1976).
Section 12.21-4(g)2 of the Kenosha County General Zoning and Shoreland/Floodplain Zoning Ordinance (Ordinance) provides that structures in the R-4 zoning district, which includes Huntoon's property, shall be no less than 75 feet from the ordinary highwater mark of any navigable water.[2] The Board is empowered to grant variances from the terms of the ordinance provided the variance "will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." Section 59.694(7)(c), STATS.;[3]see also Ordinance § 12.36-1.
*315 [5]
The party seeking a variance must prove that an unnecessary hardship will result if the variance is not granted. See Arndorfer v. Sauk County Bd. of Adjustment, 162 Wis. 2d 246, 253, 469 N.W.2d 831, 833 (1991). The hardship must be unique to the property and not a condition personal to the landowner. See Snyder, 74 Wis. 2d at 479, 247 N.W.2d at 104. Additionally, the hardship may not be self-created or merely a matter of personal convenience. See id. at 478, 247 N.W.2d at 104. Finally, the variance cannot be contrary to the public interest. See Arndorfer, 162 Wis. 2d at 256, 469 N.W.2d at 835.
The Board's decision to grant Huntoon's variance request was based on its finding that Huntoon had proven an unnecessary hardship unique to her property. In addition, the Board concluded that the grant of the variance was not against the public interest.

The Proper Test
Before we can address the parties' arguments, we must first address a threshold issuewhat is the proper test for measuring unnecessary hardship in an area variance case? The parties disagree on this question. The State contends that the test is the "no feasible use" test which this court applied in State v. Winnebago County, 196 Wis. 2d 836, 540 N.W.2d 6 (Ct. App. 1995). There, we stated that the applicant must show that "no feasible use can be made of the property" without a variance. See id. at 844, 540 N.W.2d at 9.
The Board contends that the proper test is the "unnecessarily burdensome" test as set forth by the supreme court in Snyder. There, the court stated, "When considering an area variance, the question of whether unnecessary hardship or practical difficulty *316 exists is best explained as `[w]hether compliance with the strict letter of the restrictions . . . would render conformity with such restrictions unnecessarily burdensome.'" Snyder, 74 Wis. 2d at 474-75, 247 N.W.2d at 102 (quoted source omitted). The Board, also relying on Snyder, says that the "no feasible use" test is reserved for a use variance casenot an area variance case such as this.
We resolve this dispute by beginning with the applicable statute, § 59.694, STATS. In subsec. (1), the statute provides for the creation of a board of adjustment and authorizes the board to "in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained." Section 59.694(1). At subsec. (7), the statute recites the board's powers with greater specificity. Relevant to this case is the authority recited at § 59.694(7)(c):
To authorize upon appeal in specific cases variance from the terms of the ordinance that will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.
We note that this statute speaks of "unnecessary hardship" as the test for a variance grant. It does not speak of the "no feasible use" test or the "unnecessarily burdensome" test. Nor does the statute make any distinction between use or area variances. RATHKOPF'S THE *317 LAW OF ZONING AND PLANNING[4] has observed that the statutes governing use variances and area variances fall into three categories:
(1) those which allow use and nonuse [area] variances and which allow nonuse [area] variances to be granted upon a showing of practical difficulty; (2) those which allow use and nonuse [area] variances and require a showing of unnecessary hardship for both; and (3) those which do not allow use variances and require unnecessary hardship for the granting of nonuse [area] variances. [Footnote omitted.]
Comparing these categories to the statutory language of § 59.694(7)(c), STATS., it would appear that our statute falls into the second categoryallowing both use and area variances under the unnecessary hardship test.
However, in Snyder our supreme court spoke to both area variances and use variances and, despite the uniform language of the statute, used different language when reciting the "unnecessary hardship" test for each. As to an area variance, the court recited the language we have already quoted:" '[w]hether compliance with the strict letter of the restrictions . . . would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.'" Snyder, 74 Wis. 2d at 475, 247 N.W.2d at 102 (quoted source omitted). However, when reciting the test for a use variance, the court stated, "`Since the main purpose of allowing variances is to prevent land from being rendered useless, "unnecessary hardship" can best be defined as a situation where in the absence *318 of a variance no feasible use can be made of the land.'" Id. at 474, 247 N.W.2d at 102 (quoted source omitted). Thus, while the statute speaks of unnecessary hardship as the uniform test for both use and area variances, the supreme court has created under this statutory rubric different tests for each variance. This signals that we should follow the "unnecessarily burdensome" test in this case.
The State argues, however, that this court's decision in Winnebago County mandates that we must apply the "no feasible use" test. True, we did apply that test in that case which presented an area variance question, and we also cited Snyder, among other authorities, in support. See Winnebago County, 196 Wis. 2d at 843, 540 N.W.2d at 9. However, a close examination of the case reveals that it does not support the State's argument.
In Winnebago County, the landowner sought to subdivide a parcel of land on the shores of Lake Poygan. See id. at 839, 540 N.W.2d at 7. Under the land use regulations in effect over twenty-eight years earlier when the development was originally planned, the landowners anticipated creating eight lots on the parcel. See id. at 839-40, 540 N.W.2d at 7-8. Subsequent legislation, including shoreland setback requirements, rendered four of the planned lots substandard. See id. at 840, 540 N.W.2d at 8. Thus, the landowner sought an area variance for these four lots. See id. at 840, 540 N.W.2d at 8. The board of adjustment granted the request, and the circuit court affirmed. See id. at 841, 540 N.W.2d at 8.
This court reversed the circuit court's approval of the board's action. In so doing, we applied the "no feasible use" test set out in Snyder. See Winnebago County, 196 Wis. 2d at 843-45, 540 N.W.2d at 9-10. However, *319 although the relief which the landowner sought was necessarily area based, the core question before the board was the scope and degree of the future use of the property. The landowner's development plans for the property represented a significant change in the use of the property. Under those circumstances, the area variance request carried a significant impact on the future use of the property. Rathkopf's treatise recognizes that in some instances an area variance is really a use variance in disguise:
If the variance will permit a use of the land that changes the character of the neighborhood, then it is more likely that the variance will be held to be a use variance. For example, suppose a zoning ordinance requires 800 square feet of lot area per apartment in a multi-family zone, but the board of adjustment approves a variance for construction of an apartment building that would result in there being only 400 square feet of lot area per apartment. On its face it looks like an area variance, because the subject was area. On the other hand, doubling the number of apartment units being built on one lot may have a substantial impact on the character of the neighborhood, perhaps taking it from being "moderate" to "dense." Courts have found that such a variance was a use variance.
3 RATHKOPF, supra note 4, § 38.01, at 8 (footnote omitted) (emphasis added).
Although the variance sought in Winnebago County was an area variance, the ultimate effect of the variance, if granted, would have produced a marked change in the scope and degree of the proposed development. Thus, it is not remarkable that the Winnebago County court saw the issue in terms of use, spoke to the *320 issue in those terms, and relied on the "no feasible use" test set out by the supreme court in Snyder.
In this case, Huntoon's area variance request carries no significant alteration in the use of her property or in the character of the neighborhood. To the contrary, the evidence before the Board revealed that many other residences on Hooker Lake already have decks within the setback areas.[5] While that condition is not one which controls the decision whether to grant the variance, we conclude that it is relevant on the question of which test applies.
We therefore conclude that the Board properly considered Huntoon's area variance under the "unnecessarily burdensome" test as set out in Snyder.

The Evidence
Next, we turn to the State's argument that the Board's decision was unreasonable because it is not supported by the evidence. However, at the outset we point out that some of the State's arguments on this issue are weakened because they are premised on the argument we have just rejectedthat the proper test is the "no feasible use" test. As we have held, the proper test is the "unnecessarily burdensome" test.
Huntoon's property has been in her family for approximately sixty years. She inherited the Hooker Lake property from her parents in 1991. Huntoon's husband died in 1994. Because she cannot afford to maintain her former residence and the Hooker Lake property, Huntoon plans to sell the former residence and live at the lake property. The residence was built *321 in 1936, before any setback requirements came into existence. During the ensuing years, about 15-feet of shoreline has been lost to erosion and the rising level of the lake. The entire parcel slopes down to the shore of Hooker Lake. Huntoon described the slope as "steep." Thirty-three concrete steps lead down from the residence to the lake. All of the parcel is heavily wooded.
The Board granted the variance citing a number of reasons in support. First, the Board noted that the hardship here was not self-created. We agree. Unlike Snyder, where the owner had constructed an already nonconforming structure, see Snyder, 74 Wis. 2d at 471, 247 N.W.2d at 100, here Huntoon's residence is in full compliance with all applicable rules and regulations. Thus, the granting of the variance does not aggravate an already existing deviation from the applicable codes. Moreover, as noted by various members of the Board, this case has a certain irony since it was the enactment of the setback requirements which, in part, created the hardship upon which Huntoon rested her variance request. Prior to those enactments, Huntoon would not have required a variance to construct the deck.[6] In addition, the shoreline erosion and the heightened lake level have deprived Huntoon of *322 shoreyard area which would have placed the deck outside the setback requirements, negating the need for a variance.
The Board also considered the impracticality of locating the deck on the sides of the residence. The Board noted that one side is occupied by a fireplace and the other by a bay area, whereas a door already services the lake side of the residence. More importantly, the Board correctly observed that construction of the deck on either side would require the removal of some large trees. Thus, the Board was required to weigh competing environmental concerns. As one Board member aptly stated, "To gain denial of a few feet of variation to a deck, we have chopped off our noses to spite our faces because we can cause so much other damage to that property which is already so pristine in looks."
The Board also determined that safety considerations favored the variance request. While the deck does not eliminate the slope, the Board determined that "[t]he location of petitioner's deck forms a safety barrier and a point of reference as to where the downward slope begins."
Hardship alone, however, does not warrant the grant of a variance. In addition, the hardship must be unique to the property, not a condition personal to the landowner, and the grant of the variance must not be contrary to the public interest. See Arndorfer, 162 Wis. *323 2d at 254-56, 469 N.W.2d at 834-35. The State contends that Huntoon's hardship is not unique because the lots on either side of Huntoon's property are also sloped. However, we think the State is forgetting that Huntoon also owns the adjoining parcels. Although the parcels carry separate legal descriptions, we conclude that Huntoon's property should be viewed as a single entity for purposes of her variance request. The State would have us compare Huntoon's property to itself. However, the law requires that the property be compared to that of others in the area. "`Where the hardship imposed upon an applicant's property is no greater than that suffered by nearby lands, the board of adjustment may not grant a variance to relieve it. To grant such relief would be unfair to owners who remain subject to the general restrictions of the zoning ordinance, and it would endanger the community plan by piecemeal exemption.'" Id. at 256, 469 N.W.2d at 834 (quoted source omitted) (emphasis added). The restrictions imposed by a zoning ordinance are shared by the community as a whole. From this it follows that variances from those restrictions are properly compared to the conditions of others, not to those of the applicant.
Here, the photographic evidence reveals that all of Huntoon's property shares the sloped condition which contributed to the hardship. This same evidence shows that the neighboring properties do not share the slope or that the degree of slope markedly decreases on those adjoining properties.
Finally, the Board determined that the grant of the variance was not contrary to the public interest. The Board based this determination on the variance's minimal intrusion into the setback area and the various conditions which the Board attached to the grant. We also note that this point was virtually conceded by *324 the DNR representative at the reconsideration hearing before the Board. There, the DNR representative conceded that the encroachment "probably is not going to have an impact on Hooker Lake . . . ." Instead, the DNR rested its objection on its claims that Huntoon had not established hardship and that the incremental grant of variances to persons such as Huntoon posed a cumulative risk to the public interest.
Since we have already concluded that Huntoon established a hardship, we will not discuss that matter further. As to the claim that the variance should be denied because of its cumulative effect, we see that argument as internally inconsistent. On the one hand, the DNR was telling the Board that the variance has no effect on the lake. Yet, on the other hand, the DNR was saying that it might because of the cumulative effect of past or future incursions into the shoreyard areas of the lake. If, in fact, the grant of this variance posed a risk to Hooker Lake because of the cumulative effect of other incursions into the shoreyard areas on the lake, then the DNR should not have represented to the Board that the variance would likely not have an impact on the lake. In the face of such ambiguity, the State cannot be heard to claim on appeal that the Board erred by selecting one of the alternative reasonable readings of the DNR's statement at the hearing.
In addition, the State's position comes perilously close to a policy stance against all variances from the setback requirements. The decision to grant or deny a variance obviously calls for a determination based on the particular facts of each case. The Board may not deny a variance simply because the variance constitutes a departure from the policy reflected in the ordinance. See Arndorfer, 162 Wis. 2d at 257, 469 N.W.2d at 835.
*325 We conclude this portion of our discussion by again recalling our standards of review. In reviewing the Board's decision, we apply the substantial evidence test. See Clark v. Waupaca County Bd. of Adjustment, 186 Wis. 2d 300, 304, 519 N.W.2d 782, 784 (Ct. App. 1994). This test is highly deferential to the Board's findings, and we may not substitute our view of the evidence for that of the Board. See id. If any reasonable view of the evidence would sustain the Board's findings, they are conclusive. See id. at 304-05, 519 N.W.2d at 784. In addition, Rathkopf's treatise opines that in jurisdictions which distinguish between an area variance and a use variance, the unnecessary hardship standard for an area variance is less than that for a use variance. See 3 RATHKOPF, supra note 4, § 38.01, at 7.
Although not in vogue when this residence was constructed, decks now are a common component of many residences and are routinely considered part of the total household living environment. This is especially so in pastoral or lakeside settings. Given this background, and since decks are otherwise permitted uses under the applicable zoning and since alternative locations of the deck were not feasible, the Board reasonably concluded that a denial of the variance would unreasonably burden Huntoon's ability to use her property for a recognized permitted purpose. See Snyder, 74 Wis. 2d at 475, 247 N.W.2d at 102. In addition, we see nothing in the Board's action which, pursuant to § 59.694(7)(c), STATS., violates the spirit of the ordinance. To the contrary, we see the Board's action as doing substantial justice to all concernedthus satisfying this further requirement of the statute. See § 59.694(7)(c).
Last, we address the State's argument that the Board's decision was based, in part, on factors which *326 would not support the grant of the variance. These include references to matters of personal convenience to Huntoon and the enhanced value of her property with a deck. We acknowledge that at certain points during the proceedings the Board alluded to these factors. And we further acknowledge that those factors are not relevant to a variance determination. See generally Snyder, 74 Wis. 2d at 478-79, 247 N.W.2d at 104.
Although we ultimately review the record of the Board proceedings from a legal standpoint, we also properly conduct that review from a practical standpoint. The Board's proceedings in this case were like most proceedings conducted before citizen boards or agencies. They do not reflect the structure and formality which we see in proceedings before courts of law. But such is not to be expected. The members of such boards usually are not lawyers, judges or legal commentators. And oftentimes, as in this case, the proceedings are conducted without the assistance of counsel.
As a result, the proceedings in this case were more akin to an informal roundtable discussion. While the Board was receiving facts and history from witnesses and other sources, at the same time Board members would interject their own observations and opinions and would debate the matters among themselves. Nonetheless, the proceedings were orderly and thorough.
Here, the Board's decision-making process was conducted in an open public session and recorded. The entire proceeding, including those portions reflecting the Board's deliberative process, was thorough. Both sides of the issue were explored. Although the State disputes the Board's decision, it does not contend that the Board left any stone unturned. Thus, we do not *327 think it remarkable that, at times, the Board alluded to matters which the law deems off limits or irrelevant to the variance request.[7] But those occasional comments should not otherwise undo the Board's ultimate decision if the totality of the proceedings and the Board's logic nonetheless make for a prudent and reasonable decision under the applicable law.
[6]
Here, despite the isolated references to improper factors, the Board's core logic is clearly revealed: Huntoon's wish to use a deck as part of her lakeside residence is reasonable; while such use is not barred by the zoning ordinance, the deck's location is barred because of the setback requirement; this prohibition constitutes an unnecessarily burdensome hardship because no other location is feasible; the hardship is unique to Huntoon's property; and the partial location of the deck within the setback area does not harm the public interest. The Board's logic is in keeping with the law.[8]

CONCLUSION
We conclude that the Board proceeded under a proper theory of law. We also conclude that the evidence *328 supports the Board's grant of the variance. We affirm the judgment.
By the Court.Judgment affirmed.
BROWN, J. (dissenting).
Although this case raises the issue about the potential difference in area and use variances, it is more about how a zoning agency should view the property proposed for one of these variances. Because this case concerns a variance from the wetlands zoning restrictions set out in § 59.971, STATS., 1993-94, I believe that the Board should have viewed Huntoon's land as a whole when it gauged if the shoreland setback adversely affected her. Viewing her land as a whole, she has not established that the shoreland setback is "unnecessarily burdensome," assuming that is the proper standard. Without the deck, she is still getting substantial use of her landit supports a lakefront home. I would reverse.
At oral argument, the State began by explaining why it sought this appeal; counsel stated:
[T]he Board improperly applied the legal standard of unnecessary hardship. Instead of asking whether strict compliance with the setback requirement denies Ms. Huntoon any beneficial use of her lot as a whole, the Board asked whether it unreasonably denied her a particular use of only that portion of her lot that lies between her house and the lake.
When we inquired why we must view the property as a whole, the State further offered: "It's lake property. It's a shoreland setback restriction in question."
The State based its proposal, in part, on Zealy v. City of Waukesha, 201 Wis. 2d 365, 548 N.W.2d 528 (1996), a constructive takings case concerning the *329 same wetlands zoning ordinance.[1] There, the principal issue was how a person's property should be viewed, in whole or in part, when only the part has been devalued by "conservancy zoning." See id. at 369, 375-76, 548 N.W.2d at 529, 532.
When this court examined this issue, this same panel in fact, we concluded that the answer would depend on whether the landowners viewed their property as a whole or in several parts. See Zealy v. City of Waukesha, 194 Wis. 2d 701, 713, 534 N.W.2d 917, 922 (Ct. App. 1995), rev'd, 201 Wis. 2d 365, 548 N.W.2d 528 (1996). We adopted this approach out of concern that the automatic whole property approach, which the State likewise advocated in Zealy, might have too detrimental an effect on the landowner's expected return on investment. See id. at 713, 716, 534 N.W.2d at 922, 923. Quite simply, as a person's land holdings increase in size and value, it is less likely that a single land use restriction will have a significant, negative effect on total value. See id. at 717 n.7, 534 N.W.2d at 923. Indeed, the majority seems to have continuing concerns about applying a bright-line rule to enforce the wetlands ordinance as it describes the State's position *330 in this case as coming "perilously close to a policy stance against all variances from the setback requirements." See majority op. at 324.
Nonetheless, the supreme court reversed us in Zealy. It rejected our "flexible approach" (its term) and accepted the State's position that the property must be viewed as a whole. See Zealy, 201 Wis. 2d at 376, 380, 548 N.W.2d at 532, 534. The supreme court acknowledged that one result of its whole property approach was that the landowner experienced a loss in market value, as measured by a decrease in his assessment. See id. at 379, 548 N.W.2d at 533-34. However, quoting Just v. Marinette County, 56 Wis. 2d 7, 23, 201 N.W.2d 761, 771 (1972), the supreme court found that this economic loss was not a significant concern in light of the fact that the higher value came at "the expense of harm to public rights." Zealy, 201 Wis. 2d at 380, 548 N.W.2d at 534. In Zealy, the supreme court further emphasized its role in enforcing this state's public policy of protecting against environmental degradation; the court wrote in conclusion: "Wisconsin has a long history of protecting its water resources, its lakes, rivers, and streams, which depend on wetlands for their proper survival." Id. at 382, 548 N.W.2d at 535.
With Zealy as precedent, I accept the State's claim that in variance cases involving wetlands regulations, the subject property must also be viewed as a whole. Accordingly, I would hold that the Board erred in analyzing Huntoon's variance application because under either a "no feasible use" or "practical difficulty" standard, when one views Huntoon's property as a whole, she has not demonstrated how the setback has enough effect on her use of the property to warrant a variance. I recognize that the shoreland setback has some negative effect on her property. She is unable to place the *331 deck in the most optimal position, and indeed, it may not be worth having a deck at all. But even without the deck, she is able to get most of her intended (and otherwise permitted) use of the propertyshe still has a lakefront home.
NOTES
[] Petition to review granted.
[1] Although the record is not clear, it appears that this reconsideration proceeding was prompted by a further letter of objection from the DNR.
[2] We note that the parties cite to the Kenosha County General Zoning and Shoreland/Floodplain Zoning Ordinance which has not been included in the record. Therefore, our references to the ordinance are based on the information included by the parties in the briefs submitted to the trial court and this court.
[3] We cite to the current statute recognizing that the statute governing this case was § 59.99, STATS., 1993-94. With minor exceptions not applicable here, the present statute mirrors the former.
[4] 3 EDWARD H. ZIEGLER, JR., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 38.04, at 42 (4th ed. 1997).
[5] The record does not reveal whether these are legal nonconforming uses, legal uses under the grant of variances, or outright violations of the zoning ordinance.
[6] The State argues that consideration of this kind of history is improper under Clark v. Waupaca County Bd. of Adjustment, 186 Wis. 2d 300, 519 N.W.2d 782 (Ct. App. 1994). The State contends that in Clark the "appellant's substandard-size lake lot had been in their family since it was platted around 1905. Even so, the court upheld the county's denial of variances which would have permitted them to build a single-family residence on the lot." However, while those were the facts of Clark, the board never relied on such history in making its decision, nor did the court of appeals rely on that history in upholding the board's determination. The State overreads Clark. The State also argues that the use of this history "would negate the effect of any zoning ordinances passed after a person owned a parcel of property." However, we are not saying that such history alone constitutes the hardship. We are simply saying that a board may choose to consider such history, together with other relevant facts, when making the hardship determination.
[7] We daresay that if jury deliberations or the decision conferences of an appellate court were conducted under like conditions, similar misstatements would be detected.
[8] We disagree with the dissent's contention that this issue should be analyzed under the supreme court's opinion in Zealy v. City of Waukesha, 201 Wis. 2d 365, 548 N.W.2d 528 (1996). Zealy concerned a claim that certain zoning constituted a constructive taking. This case concerns an application for an area variance. Those are distinct and separate legal concepts involving distinct and separate legal principles.
[1] The majority carefully distinguishes State v. Winnebago County, 196 Wis. 2d 836, 540 N.W.2d 6 (Ct. App. 1995), in its analysis of area and use variances and reaches a conclusion that Winnebago County does not apply here. See majority op. at 318-20. Nonetheless, I believe that Winnebago County is significant because in it we first contemplated this "whole or part" connection between variance cases and takings cases. See Winnebago County at 844 n.8, 540 N.W.2d at 9. However, because the variance applicants in Winnebago County clearly presented their "parcel as a single unit," we did not actually address the issue. See id. (citing Zealy v. City of Waukesha, 194 Wis. 2d 701, 534 N.W.2d 917 (Ct. App. 1995)).