Alfred A. ZEALY, Plaintiff-Appellant,

v.

CITY OF WAUKESHA, Defendant-Respondent-Petitioner.

Supreme Court

*No. 93–2831. Oral argument April 29, 1996.—Decided June 4, 1996.*

(Also reported in 548 N.W.2d 528.)

For the defendant-respondent-petitioner there were briefs by *Curt R. Meitz*, City Attorney and *Karen A. Macherey*, assistant city attorney and oral argument by *Curt R. Meitz*.

For the plaintiff-appellant *James W. Hammes* and *Cramer, Multhauf & Hammes*, Waukesha and oral argument by *James W. Hammes*.

Amicus curiae brief was filed by *John S. Greene*, assistant attorney general for the State of Wisconsin with whom on the brief was *James E. Doyle*, attorney general.

Amicus curiae brief was filed by *Brian W. Ohm*, Madison for The Association of State Wetland Managers, Inc.

Amicus curiae brief was filed by *Lawrence E. Classen*, Madison for the Wisconsin's Environmental Decade, Inc.

Amicus curiae brief was filed by *Kristine A. Euclide, Meg Vergeront* and *Stafford, Rosenbaum, Rieser & Hansen*, Madison for the National Wildlife Federation, Wisconsin Wildlife Federation, National Audubon Society and Wisconsin Audubon Council. Of counsel was *Glenn P. Sugameli*, and *National Wildlife Federation*, Washington, D.C.; *Cameron Davis* and *National Wildlife Federation*, Ann Arbor, MI and *John D. Echeverria* and *National Audubon Society*, Washington, D.C.

Amicus curiae brief was filed by *Peter A. Peshek, Paul G. Kent, L. Stuart Rosenberg* and *DeWitt, Ross & Stevens, S.C.*, Madison; *Curtis A. Witynski*, Madison; *Thomas W. Harnish*, Madison; *William P. O'Connor* and *Wheeler, Van Sickle & Anderson*, Madison for the City of Madison, League of Wisconsin Municipalities, Wisconsin Towns Association and the Wisconsin Association of Lakes, Inc and oral argument by *Paul G. Kent*.

ROLAND B. DAY, C.J.   This is a review of a published decision of the court of appeals[1] affirming in

---

[1] *Zealy v. City of Waukesha*, 194 Wis. 2d 701, 534 N.W.2d 917 (Ct. App. 1995).

part and reversing in part a judgment and order of the circuit court for Waukesha County, Willis J. Zick, Judge, and remanding the cause with directions. The issue before this court is whether the zoning of certain land owned by Plaintiff-Appellant Alfred A. Zealy (Zealy) as a conservancy district in order to protect wetlands constitutes a constructive taking of property by the government for which a landowner should be compensated. We conclude that the conservancy zoning placed on Zealy's land did not effect a constructive taking. We therefore reverse the court of appeals.

The parcel of land here at issue consists of approximately 10.4[2] contiguous acres. The parcel was originally part of an approximately 250-acre parcel annexed from the Town of Waukesha to the City of Waukesha (City) in 1967. Prior to annexation, the property was zoned A-3 by the Town of Waukesha. This zoning permitted agricultural use, and Zealy's parents used the property to grow crops in a truck farming operation. After annexation, the City zoned the land R-1, a zoning permitting, among other uses, residential

---

[2] Throughout the proceedings in this case, the parties have provided varying figures for the acreage of Zealy's land. At the trial court, the parties and the court stated that the entire parcel consisted of 11 or 11.2 acres. In their briefs before this court, Zealy states that the parcel consists of 10.2 acres, while the City describes the parcel as being 10.3 acres. The court of appeals decision states that the parcel is 10.1 acres. The figure we here provide, 10.4 acres, is based on documents attached to the affidavit of the City's director, which are included in the record. These documents show that the parcel currently consists of .57 acres zoned B-4, 1.57 acres zoned R-1, and 8.24 acres zoned C-1, for a total of 10.38 acres. (All figures are rounded to the nearest hundredth of an acre.) Rounding to the nearest tenth, we will henceforth describe the parcel as consisting of a total of 10.4 acres.

use. Later, a small portion of the land was rezoned B-4, allowing business use. The property continued to be used for farming until approximately 1981. The other lands in the 250-acre parcel were sold off until only the 10.4-acre parcel at issue in this case remained in Zealy's possession. As of the time he commenced this action, Zealy used the land for peat mining.

On March 16, 1982, Zealy, his mother, and his brother, all of whom at that time shared interests in the property, executed an easement granting the City the right to construct, maintain, and operate sanitary and storm sewers on Zealy's land. Prior to the execution of the easement, Zealy had met with the City's Director of Public Works and City Engineer. The Director of Public Works presented Zealy with a drawing showing proposed future development of the property as a residential area. The easement provided that the City would not levy any special assessments for the storm or sewer mains installed on the property. Zealy alleges that the representations made by the City's officials led him to grant the easement. The City eventually constructed a sanitary and storm sewer on a portion of the property.

On July 3, 1985, the City changed the zoning on approximately 28.6 acres of land in the City from R-1 to C-1, creating a conservancy district.[3] Included in the conservancy district were 8.2 acres of Zealy's parcel. These 8.2 acres may not be used for residential use; the remaining land in the parcel, approximately 2.1 acres, is zoned for residential (1.57 acres) and business (.57

---

[3] Zealy has filed a motion with this court asking that we take judicial notice of the minutes of the City's Plan Commission meeting of November 14, 1984, and the City's rezoning ordinance. We hereby grant Zealy's motion.

acres) use. The C-1 zoning allows agricultural use of the property.

Prior to the rezoning, the City's assessor had valued the entire 10.4-acre parcel at approximately $81,000.00; after the rezoning, the City assessed the value of the property at approximately $57,000.00. Zealy claims that the fair market value of the 8.2 acres, if developed for residential use as allowed under R-1 zoning, would be approximately $200,000.00. Zealy has never submitted an application for a building permit or plans to the City for residential construction on the land, nor has Zealy shown that he has made any expenditures toward such construction. Zealy claims that the value of the 8.2-acre parcel under the present C-1 zoning is approximately $4,000.

Zealy brought an inverse condemnation action[4] against the City, claiming that its rezoning of his land constituted a regulatory taking without compensation, and that the City should be equitably estopped from enforcing the rezoning because of Zealy's reliance on its representations. The circuit court dismissed Zealy's claims on both issues. With respect to the first issue, the circuit court concluded that Zealy's parcel should be considered as a whole in determining whether a taking occurred. On appeal, the court of appeals held that the circuit court had erred when it considered the parcel as a whole, and reversed and remanded for a new trial. *See Zealy*, 194 Wis. 2d at 706, 718.

The City, as well as several of the parties submitting briefs as amici curiae, argue to this court that this matter is not ripe for adjudication. These parties note that a regulatory takings claim is not ripe "until the

---

[4] Zealy brought this action pursuant to Wis. Stat. § 32.10 (1993-94).

government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Streff v. Town of Delafield*, 190 Wis. 2d 348, 354, 526 N.W.2d 822 (Ct. App. 1994) (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985)). In the present matter, Zealy has never sought to have his property rezoned.[5] We recognize that a lack of ripeness in a takings claim should normally result in dismissal. *See, e.g., Schlieper v. DNR*, 188 Wis. 2d 318, 322-23, 525 N.W.2d 99 (Ct. App. 1994). However, we conclude that addressing the merits of the case at bar would best serve the interests of justice. The resolution of this case will settle issues presently unclear in our law of regulatory takings. We also address the merits in consideration of the extensive briefing by numerous interested persons and entities who filed amicus briefs, many of which exclusively discuss the takings issues raised in this case. This court has previously recognized such considerations in reaching the merits of the takings issue in *M & I Marshall & Ilsley Bank v. Town of Somers*, 141 Wis. 2d 271, 286, 414 N.W.2d 824 (1987). For the reasons above stated, we pursue a similar course of action here.

The issue in this case is whether the City's ordinance constituted a taking of Zealy's property without compensation. This is a question of law, and thus we undertake our review without deference to the decisions of the courts below. *Ball v. Dist. No. 4, Area Bd.*,

---

[5] At oral argument, Zealy's counsel contended that taking such actions would have been fruitless. We also note that, in answers to interrogatories filed in this case, Zealy stated that his proposed use, presumably residential, would not be allowed even under a variance to the existing zoning.

117 Wis. 2d 529, 537, 345 N.W.2d 389 (Ct. App. 1984). The Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides in part that private property shall not "be taken for public use, without just compensation." Article I, § 13 of the Wisconsin Constitution states:

> Private property for public use. Section 13. The property of no person shall be taken for public use without just compensation therefor.

Takings jurisprudence has developed from two competing principles: on one hand, respect for the property rights of individuals; on the other, recognition that the government retains the ability, in furtherance of the interests of all citizens, to regulate an owner's potential uses of land. Thus, in *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926), the United States Supreme Court held municipal zoning to be a permissible exercise of the police power, while in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922), the Court held that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Such takings are described as "constructive" or "regulatory" takings.

In cases decided since *Mahon*, the United States Supreme Court has established a rough framework for determining when a regulatory taking has occurred: "In 70-odd years of succeeding 'regulatory takings' jurisprudence, we have generally eschewed any 'set formula' for determining how far is too far, preferring to 'engag[e] in . . . essentially ad hoc, factual inquiries.' " *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992) (quoting *Penn Central Transp.*

*Co. v. New York City*, 438 U.S. 104, 124 (1978)). This court has adopted a similar method of inquiry. *See Noranda Exploration, Inc., v. Ostrom*, 113 Wis. 2d 612, 624, 335 N.W.2d 596 (1983). The United States Supreme Court has identified several factors particularly relevant to the inquiry in cases alleging a regulatory taking: "[T]he Fifth Amendment is violated when land-use regulation 'does not substantially advance legitimate state interests or denies an owner economically viable use of his land.' " *Lucas*, 505 U.S. at 1016 (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980)). When a landowner alleges that a regulation effects a taking as applied to a particular piece of property, the factors courts should examine are described as "the character of the governmental action," "the economic impact of the regulation on the claimant," and "the extent to which the regulation has interfered with distinct investment-backed expectations." *Penn Central*, 438 U.S. at 124 (quoted in *Lucas*, 505 U.S. at 1019 n.8).

Although phrased in slightly differing terms in the cases, the rule emerging from opinions of our state courts and the United States Supreme Court is that a regulation must deny the landowner all or substantially all practical uses of a property in order to be considered a taking for which compensation is required. *See Lucas*, 505 U.S. at 1015 (regulatory taking occurs when regulation "denies all economically beneficial or productive use of land"); *Dolan v. City of Tigard*, 114 S. Ct. 2309, 2316 (1994) (regulatory taking occurs if it denies an owner "economically viable use of his land") (quoting *Agins*, 447 U.S. at 260); *Zinn v. State*, 112 Wis. 2d 417, 424, 334 N.W.2d 67 (1983) (regulatory taking occurs "when the government

374

restriction placed on the property 'practically or substantially renders the property useless for all reasonable purposes' ") (quoted sources omitted); *Reel Enters. v. City of La Crosse*, 146 Wis. 2d 662, 674, 431 N.W.2d 743 (Ct. App. 1988), *review denied*, 147 Wis. 2d 887 (1988) (regulatory taking occurs if it "deprives the owner of all, or practically all, of the use"). Thus, for example, the United States Supreme Court in *Lucas* held that a landowner who purchased two residential lots at a combined price of nearly one million dollars and was subsequently barred from building residential structures by a state beachfront preservation law, rendering the lots without value, may be entitled to compensation for his loss. *See Lucas*, 505 U.S. at 1006-07, 1019-32.

However, before reaching this determination, a court must first determine what, precisely, *is* the property at issue:

> Because our test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property, one of the critical questions is determining how to define the unit of property "whose value is to furnish the denominator of the fraction."

*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987) (quoting Frank I. Michelman, *Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law*, 80 Harv. L. Rev. 1165, 1192 (1967)). The court of appeals in this case held that a landowner's anticipated investment opportunities should be examined in order to determine what the parcel at issue should be. In this, the court of appeals was in error. We conclude that the United States Supreme Court has never endorsed a

test that "segments" a contiguous property to determine the relevant parcel; rather, the Court has consistently held that a landowner's property in such a case should be considered as a whole.

> "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole . . . .

*Penn Central*, 438 U.S. at 130-31. Similarly, in *Keystone*, 480 U.S. at 498, the Court noted practical arguments against allowing the segmentation of the property at issue:

> Many zoning ordinances place limits on the property owner's right to make profitable use of some segments of his property. A requirement that a building occupy no more than a specified percentage of the lot on which it is located could be characterized as a taking of the vacant area . . . . [O]ne could always argue that a setback ordinance requiring that no structure be built within a certain distance from the property line constitutes a taking because the footage represents a distinct segment of property for takings law purposes.

The court of appeals in this case cited *Lucas*, 505 U.S. at 1016-17 n.7, for the proposition that courts should use a flexible approach in deciding when to segment the property at issue in takings cases. *See Zealy*, 194 Wis. 2d at 716-17 & n.6. However, we note that this issue was not before the *Lucas* Court. The Court did not have to consider whether the property in that case might require segmentation because the trial court had

found that the entirety of the property at issue was rendered valueless by the contested regulation. *See Lucas*, 505 U.S. at 1016-17 n.7. Justice Scalia's comments on this point were therefore dicta. Furthermore, in *Concrete Pipe and Prods. v. Construction Laborers Pension Trust*, 113 S. Ct. 2264, 2290 (1993), Justice Souter, writing for the majority of the Court, replied in the following manner to an argument that the property at issue should be segmented:

> [W]e rejected this analysis years ago in *Penn Central* . . . where we held that a claimant's parcel of property could not first be divided into what was taken and what was left for the purpose of demonstrating the taking of the former to be complete and hence compensable. To the extent that any portion of property is taken, that portion is always taken in its entirety; the relevant question, however, is whether the property taken is all, or only a portion of the parcel in question.

We note that this opinion was written subsequent to *Lucas*, and that Justice Scalia joined the opinion. We conclude, therefore, that the cases of the United States Supreme Court do not support the proposition that a contiguous property should be divided into discrete segments for purposes of evaluating a takings claim.

We also note a possible difficulty in the application of the rule proposed by the court of appeals in the present case. Looking to a landowner's anticipated use of various parcels and sub-parcels of land in order to determine the extent of the parcel at issue would require ascertaining a landowner's subjective intent before being able to evaluate a possible takings claim. This would confuse both the agencies responsible for zoning and the courts called on to adjudicate such

claims, and increase the difficulty of an already complex inquiry.

The court of appeals also cited *Ciampitti v. United States*, 22 Cl. Ct. 310 (1991), and *Loveladies Harbor, Inc. v. United States*, 28 F.3d 1171 (Fed. Cir. 1994), for its rule allowing segmentation of property. These precedents, which in any event are merely persuasive, *see Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 307, 340 N.W.2d 704 (1983), do not alter our view of the rule we apply in this case. First, we note that the court in *Ciampitti* had to determine what the extent of the property at issue was after a lengthy series of purchases, *see Ciampitti*, 22 Cl. Ct. at 311-17, and ultimately decided against segmentation of the property, *id.* at 320. The case thus bears little relation to the instant case, in which the property is part of a single purchase. Second, in *Loveladies*, 28 F.3d at 1180, the court of appeals excluded from the parcel at issue lands that had already been developed and/or sold, as well as lands for which the development rights had been dedicated to the state in return for a building permit on the remaining lands. No such concerns are present in the instant case, in which we consider only the 10.4 undeveloped acres owned by Zealy at the time of its rezoning.

We thus conclude that the property at issue in this case is Zealy's entire 10.4-acre parcel, and now examine the facts in the record to determine whether the City's C-1 zoning effected a taking.[6] First, we note

---

[6] The court of appeals stated in its opinion that Zealy conceded that "when all [10.4] acres are viewed together, the effect of the zoning change is not severe enough to support a constructive taking claim because of the value of his commercial property." *Zealy*, 194 Wis. 2d at 706. In both oral argument and in his briefs before this court, Zealy's counsel now claims that he

that after the rezoning, Zealy still retains approximately 2.1 acres zoned for business and/or residential use. The City's assessor has valued the property at nearly three-fourths of its former value. Zealy presented the circuit court with an assessment valuing the 8.2-acre parcel at approximately $200,000, presuming residential use was allowed, but as this court stated in *Just v. Marinette County*, 56 Wis. 2d 7, 23, 201 N.W.2d 761 (1972):[7]

made no such concession. We note that the following exchange between Zealy's counsel (Mr. Hammes) and the circuit court, from the record of the hearing at which the circuit court granted summary judgment against Zealy on the regulatory taking issue, appears to represent just such a concession:

> THE COURT: . . . . I am open to proof if you can offer some proof that [the zoning] deprives of reasonable use of [sic] the entire [10.4] acres.
> MR. HAMMES: It can't, because he has a buildable business site before and after.
> . . . .
> THE COURT: You concede it doesn't deprive reasonable use of [10.4] acres?
> MR. HAMMES: Under the Court's analysis, that's correct.

We further note that, at another point in his brief, Zealy's counsel states that the 2.1 acres that were not rezoned retain "substantial value." In any event, whether or not Zealy concedes that the remaining 2.1 acres of his parcel contain sufficient value to defeat a regulatory taking claim, we can and do find facts in the record, as we describe in the text of this opinion, sufficient to support the summary judgment rendered against him by the circuit court.

[7] Zealy argues that this decision is limited to cases involving the public trust doctrine, under which the state has the duty to protect shoreland areas. However, as this court stated in *Somers*, 141 Wis. 2d at 287, *Just* is not limited to cases involving that doctrine, and the case is thus equally applicable to wetland regulations.

[The landowners] argue their property has been severely depreciated in value. But this depreciation of value is not based on the use of the land in its natural state but on what the land would be worth if it could be filled and used for the location of a dwelling. While loss of value is to be considered in determining whether a restriction is a constructive taking, value based upon changing the character of the land at the expense of harm to public rights is not an essential factor or controlling.

Finally, we note that under the City's current zoning ordinance, the 8.2 acres of land zoned C-1 may still be used for its historical use, farming. Viewed as a whole, the parcel retains a combination of residential, commercial, and agricultural uses.

██

It may be true that in some cases, as Justice Scalia stated in *Lucas*, that "the rhetorical force of [the] 'deprivation of all economically feasible use' rule is greater than its precision," *Lucas*, 505 U.S. at 1016 n.7, but this is not such a case. The extent of the parcel at issue in this case is clearly identified, and just as clearly the parcel retains substantial uses. Under these facts, we cannot conclude that the City's rezoning deprived Zealy of all or substantially all of the use of his land. Without any such loss to the landowner, a taking cannot occur. We therefore conclude that the circuit court correctly granted summary judgment against Zealy on this issue.

Two further points are raised by the takings issue in this case. First, our conclusion that the City's ordinance did not effect a taking was compelled by our holding that Zealy did not suffer the loss of substantially all of the beneficial uses of his land. We therefore need not consider another factor we may look to in

takings cases, whether the regulation did not advance a legitimate state interest. Zealy only contested the interests served by the City's ordinance to the extent that he claimed the City's regulation served the improper purpose of allowing the City to "take" his land rather than purchase it outright, an argument we reject. Second, we also do not reach the issue of the continuing validity of this court's analysis in *Just* in view of the Supreme Court's majority opinion in *Lucas*, which expressed disagreement with the South Carolina Supreme Court's conclusion that the regulation at issue could be justified as an exercise of the police power in order to prevent the harm to the public interest resulting from residential development of wetlands. *See Lucas*, 505 U.S. at 1020-32. Such an evaluation would be required only in a case in which, as in *Lucas*, the value of the land at issue is "wholly eliminated." *Lucas*, 505 U.S. at 1026. For the same reason, we need not here consider the argument, raised by several amici curiae in this case, that *Just* is a "background principle[ ] of the State's law of property," *see Lucas*, 505 U.S at 1029, that would justify even a total regulatory taking. Nothing in this opinion limits our holding in *Just* and cases following its rule.

Finally, Zealy also argues that he obtained a vested right to the former residential zoning on his land by virtue of the representations made to him by City officials during the negotiations for his granting of the City's easement. Property owners obtain no vested rights in a particular type of zoning solely through reliance on the zoning. *Buhler v. Racine County*, 33 Wis. 2d 137, 148, 146 N.W.2d 403 (1966). Zealy has not shown that he made any expenditures in reliance on the zoning, nor has he ever submitted an application

for a building permit proposing a residential use of the land. Thus, he did not meet the requirement of submitting an application for a building permit "which conforms to the zoning or building code requirements in effect at the time of the application," *see Lake Bluff Hous. Partners v. City of South Milwaukee*, 197 Wis. 2d 157, 177, 540 N.W.2d 189 (1995),[8] and his claim for vested rights must fail.

Wisconsin has a long history of protecting its water resources, its lakes, rivers, and streams, which depend on wetlands for their proper survival. As stated in *Just*, 56 Wis. 2d at 17:

> Swamps and wetlands were once considered wasteland, undesirable, and not picturesque. But as the people became more sophisticated, an appreciation was acquired that swamps and wetlands serve a vital role in nature, are part of the balance of nature and are essential to the purity of the water in our lakes and streams. Swamps and wetlands are a necessary part of the ecological creation and now, even to the uninitiated, possess their own beauty in nature.

Our review of the relevant law of this court and the United States Supreme Court leads us to the conclusion that the circuit court correctly dismissed Zealy's claims. We therefore reverse the decision of the court of appeals and reinstate the circuit court's judgment and order.

*By the Court.*—The decision of the court of appeals is reversed.

---

[8] Zealy submitted his brief in this case prior to our decision in *Lake Bluff*.