R.W. DOCKS & SLIPS, Plaintiff-Appellant,†

v.

STATE of Wisconsin and Wisconsin Department of
Natural Resources,  Defendants-Respondents.

Court of Appeals

*No.  99–2904.  Submitted on briefs June 12, 2000.—Decided
July 11, 2000.*

## 2000 WI App 183

(Also reported in 617 N.W.2d 519.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jason W. Whitley* of *Novitzke, Gust & Sempf* of Amery.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Joanne F. Kloppenburg,* assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. R.W. Docks & Slips appeals from a summary judgment dismissing Docks' claim against the Wisconsin Department of Natural Resources. Docks argues that the circuit court erred by concluding that the DNR's denial of a dredging permit did not constitute a regulatory taking. Because Docks maintains the benefit of all or substantially all of its property and because it assumed the risk of loss inherent in commencing a project without all necessary permits, we affirm the circuit court's judgment dismissing Docks' claim.

## BACKGROUND

¶ 2. The relevant facts are undisputed. Docks, a general partnership in the business of developing recreational marinas, developed Port Superior in Bayfield. Port Superior was designed to consist of 272

boat slips. In 1986, the DNR refused to grant Docks the dredging permit necessary to construct the remaining seventy-one of its 272 planned boat slips. After exhausting the available administrative appeals, Docks filed suit against the DNR in circuit court, alleging a taking of property without just compensation in violation of both the state and federal constitutions. The circuit court subsequently granted the DNR's motion for summary judgment and this appeal followed.

## ANALYSIS

¶ 3.    Whether summary judgment was appropriately granted presents a question of law that we review independently of the circuit court. *See Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 651–52, 476 N.W.2d 593 (Ct. App. 1991). When reviewing summary judgments, we utilize the same analysis as the circuit court and must apply the standards set forth in WIS. STAT. § 802.08(2). *See Schultz v. Industrial Coils*, 125 Wis. 2d 520, 521, 373 N.W.2d 74 (Ct. App. 1985). In general, "summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Kenefick v. Hitchcock*, 187 Wis. 2d 218, 224, 522 N.W.2d 261 (Ct. App. 1994).

¶ 4.    The circuit court concluded that (1) Docks did not have a recognizable property interest in the seventy-one undeveloped boat slips; (2) even if Docks had a recognizable property interest in the undeveloped boat slips, its interest was subject to the public

trust doctrine;[1] and (3) in any event, there was no unconstitutional taking because Docks has retained considerable practical use of the property. Docks contends that the circuit court mischaracterized its argument. It concedes that the DNR had the authority to deny the permits necessary to develop the remaining boat slips. Docks argues, however, that the DNR's denial of the dredging permit necessary to complete the remaining seventy-one boat slips constituted a regulatory taking of Docks' property without just compensation. Specifically, Docks contends that the DNR's denial of the dredging permit either deprived Docks of substantially all of the beneficial use of its property or deprived it of its reasonable investment expectations.

¶ 5. The issue of whether the DNR's denial of the dredging permit constituted a regulatory taking of Docks' property without just compensation is a question of law that this court reviews de novo. *See Zealy v. City of Waukesha*, 201 Wis. 2d 365, 372, 548 N.W.2d 528 (1996). Article I, § 13 of the Wisconsin Constitution provides: "The property of no person shall be taken for public use without just compensation therefor." Our supreme court has recognized, however, that a taking "need not arise from an actual physical occupation of land by the government." *Eberle v. Dane Cty. Bd. of Adjust.*, 227 Wis. 2d 609, 621, 595 N.W.2d 730 (1999). Rather, "[t]here can be a 'taking' if a restriction, short

[1] Under the public trust doctrine, "the state holds the beds of navigable waters in trust for all of its citizens." *State v. Bleck*, 114 Wis. 2d 454, 465, 338 N.W.2d 492 (1983). Although originally designed to protect commercial navigation, the doctrine "has been expanded to safeguard the public's use of navigable waters for purely recreational and nonpecuniary purposes." *Id.*

of an actual occupation, deprives the owner of all, or substantially all, of the beneficial use of his property." *Id.* (quoting *Howell Plaza, Inc. v. State Highway Comm'n,* 66 Wis. 2d 720, 726, 226 N.W.2d 185 (1975)). Takings that do not involve physical invasions of land are called "regulatory takings." *Id.* at 622.

¶ 6. When a landowner alleges a regulatory taking, a court should examine the following factors: (1) the character of the governmental action; (2) the economic impact of the regulation on the claimant; and (3) the extent to which the regulation has interfered with distinct investment-backed expectations. *See Zealy,* 201 Wis. 2d at 374. Although a court should consider these factors, "the rule emerging from opinions of our state courts and the United States Supreme Court is that a regulation must deny the landowner all or substantially all practical uses of a property in order to be considered a taking for which compensation is required." *Id.*

¶ 7. Before determining whether a regulatory taking has occurred, however, a court must first determine what is the property at issue. *See id.* at 375. Our supreme court has recognized that a landowner's property should be considered as a whole:

> "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole.

*Id.* at 376 (quoting *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 130–31 (1978)). To the extent that Docks may argue that it has been deprived of all or substantially all of the beneficial use of its property, it is mistaken. We do not look to the value of the undeveloped boat slips, but rather to the value of Docks' property as a whole. Further, any depreciation in the property's value must not be based upon changing the character of the land at the expense of harm to public rights. *See id.* at 380. Despite its inability to develop the seventy-one boat slips, Docks retains the reasonable use of the whole of its riparian property, including the existing 201 boat slips, marina and appurtenant structures.

¶ 8. Docks nevertheless argues that its investment-backed expectations have been thwarted. It contends:

> [T]he taking has resulted from government approval of the development of marina facilities and infrastructure necessary to incorporate five main docks and then, after the facilities and infrastructure have been built, refusing the necessary permit to complete the marina in order to protect a weedbed that would have never grown but for R.W. Docks' investments.

Conversely, the DNR responds that "a property owner who acquires and begins to develop property knowing that permits are required to do so, cannot presume the permits will be granted, and assumes the risk of loss in the event of a denial." We agree. Although Docks intimates that the DNR granted the previous permits with knowledge of Docks' intent to ultimately build 272 boat slips, it nevertheless concedes that it did not have all permits necessary to complete the project and further

concedes that the DNR had the authority to deny the necessary permits. As such, Docks should not have presumed that all necessary permits would be granted. It assumed the risk of loss in the event of the DNR's denial of the permits sought.

¶ 9.    Because Docks maintains the benefit of all or substantially all of its property and because it assumed the risk of loss inherent in commencing a project without all necessary permits, we affirm the circuit court's judgment dismissing Docks' claim.[2]

*By the Court.*—Judgment affirmed.

---

[2] We refrain from addressing any alternative arguments because only dispositive issues need be addressed. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).