REBECCA GRASSL BRADLEY, J. (dissenting).
¶ 47 "Property rights are necessary to preserve freedom, for property ownership empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them." Murr v. Wisconsin, --- U.S. ----, 137 S.Ct. 1933, 1943, 198 L.Ed.2d 497 (2017). The majority *398 allows the constructive taking of Adams Outdoor's real property by misapprehending the property interest at issue to be a "right to visibility" rather than the permit for the west-facing billboard. See, e.g., Adams Outdoor Advert., Ltd. v. City of Madison, 2006 WI 104, ¶ 59, 294 Wis. 2d 441, 717 N.W.2d 803 ; Clear Channel Outdoor, Inc. v. City of Milwaukee, 2017 WI App 15, ¶¶ 10, 24, 374 Wis. 2d 348, 893 N.W.2d 24, review denied, 2017 WI 81, 376 Wis. 2d 641, 899 N.W.2d 704. Because the City of Madison deprived Adams Outdoor of all economically beneficial use of its permit by constructing a bridge that obliterated the permit's value, the court of appeals erred in affirming the circuit court's grant of summary judgment dismissing Adams Outdoor's inverse condemnation claim. I would reverse the court of appeals' decision and remand for a determination of the proper compensation owed for the constructive taking of the west-facing billboard permit. I respectfully dissent.
I
¶ 48 Adams Outdoor owns an irregular-shaped piece of land comprising less than *671 half an acre in size along the Beltline Highway in Madison. The land's only "occupant" is a structure containing two billboards, also owned by Adams Outdoor. One billboard faces eastbound traffic and the other billboard faces westbound traffic. The City of Madison treats each billboard as separate property by requiring an individual permit for each side. Madison, Wis., Gen. Ordinance § 31.041(3) (2015). Adams Outdoor paid separate fees to secure the required permit for each billboard, it must pay advertising copy change fees per side when the content displayed on the billboard *399 changes, and it is taxed separately for the west-facing and the east-facing billboard permit. Adams Outdoor owns the permits.[1]
¶ 49 Many years ago, the City of Madison enacted an ordinance banning any new off-premise advertising signs. See Madison, Wis., Gen. Ordinance § 31.11. As a result of the ordinance, no new permits may be issued for any billboards not already in existence. The billboards with permits predating the ban are classified as legal, nonconforming signs. Id., § 31.05. As property that is finite and restricted as legal-nonconforming use by Madison's zoning ordinances, permits for existing billboards carry significant value. See Adams Outdoor Advert., Ltd., 294 Wis. 2d 441, ¶ 85, 717 N.W.2d 803 ("Value primarily inheres in the permit because the City has severely restricted the number of permits, artificially driving up their value.").
¶ 50 The land upon which Adams Outdoor's billboard sits was valued at $1.46 million before the construction of the bridge. After the bridge was erected, the value of the land dropped to $720,000. For purposes of this appeal, it is undisputed that the bridge completely obscures the west-facing billboard.
¶ 51 The majority identifies "the essence" of Adams Outdoor's property interest to be "based upon a right of visibility of private property from a public road," denies a property owner any "property interest in the continued visibility of its property," and declines to address whether a taking occurred. Majority op. ¶¶ 29-30, 37, 46 ("In sum, we conclude that a right to *400 visibility of private property from a public road is not a cognizable right giving rise to a protected property interest."). As a result, Adams Outdoor loses the freedom to use its property as it wishes and instead must submit to the government's preferences.
II
¶ 52 Whether the City's construction of a bridge constructively took Adams Outdoor's property is a question of law reviewed independently. See Howell Plaza, Inc. v. State Highway Comm'n, 92 Wis. 2d 74, 80, 284 N.W.2d 887 (1979). Both the Wisconsin Constitution and the United States Constitution prohibit the City from taking Adams Outdoor's property without just compensation. Wis. Const. art. I, § 13 ("The property of no person shall be taken for public use without just compensation therefor."); U.S. Const. amend. V. ("[N]or shall private property be taken for public use, without just compensation."). In order to establish an unconstitutional taking, Adams Outdoor needs to show: "(1) a property interest exists; (2) the property interest has been taken; (3) the taking was for public use; and (4) the taking was without just compensation."
*672 Wis. Med. Soc'y, Inc. v. Morgan, 2010 WI 94, ¶ 38, 328 Wis. 2d 469, 787 N.W.2d 22. "[I]t is 'imperative that the Court maintain absolute fidelity to' the [Takings] Clause's express limit on the power of the government over the individual, no less than with every other liberty expressly enumerated in the Fifth Amendment or the Bill of Rights more generally." Kelo v. City of New London, 545 U.S. 469, 507, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005) (Thomas, J., dissenting) (quoting Shepard v. United States, 544 U.S. 13, 28, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (Thomas, J., concurring in part and concurring in judgment) ).
*401 ¶ 53 A property owner proves a taking when a government regulation or action denies him all or substantially all practical uses of his property. Zealy v. City of Waukesha, 201 Wis. 2d 365, 374, 548 N.W.2d 528 (1996). Stated otherwise, a taking occurs when the government denies a property owner all "economically viable use of his [property]." Id. (quoting Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) ).
¶ 54 In order to determine whether the government deprived an owner of all or substantially all economically viable use of property, a court first must define the property interest-commonly deemed the "denominator" because the court must compare the value taken from the property with the value that remains and the property's value therefore "furnish[es] the denominator of the fraction." Id. at 375, 548 N.W.2d 528 (quoting Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 497, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987) ). Defining the denominator drives the analysis. The United States Supreme Court offers guidance in properly identifying the denominator-the property interest:
[N]o single consideration can supply the exclusive test for determining the denominator. Instead, courts must consider a number of factors. These include the treatment of the [property] under state and local law; the physical characteristics of the [property]; and the prospective value of the regulated [property]. The endeavor should determine whether reasonable expectations about property ownership would lead a [property ]owner to anticipate that his holdings would be treated as one parcel, or, instead, as separate [property]. The inquiry is objective[.]
Murr, 137 S.Ct. at 1945.
*402 A
¶ 55 Ascertaining the denominator-identifying the property interest-presents the threshold issue for the court to resolve. "[T]he answer to this question may be outcome determinative." Id. at 1944. This case involves several distinct property interests: (1) the half-acre of land; (2) the permit for the west-facing billboard; (3) the permit for the east-facing billboard; and (4) the billboard structure itself.[2] Adams Outdoor owns all four pieces of property.
¶ 56 The majority avoids selecting any of these as the denominator; instead, it defines the property interest as the "right to visibility." In so doing, the majority ignores the essential fact that the west-facing billboard permit itself constitutes individual real property and the correct denominator in the takings analysis. Consequently, the majority reaches a legally erroneous outcome.
*673 ¶ 57 In Murr, the United States Supreme Court identified state law treatment of the property as a factor for determining the denominator. 137 S.Ct. at 1945. In Adams Outdoor Advert., Ltd., 294 Wis. 2d 441, ¶ 59, 717 N.W.2d 803, this court recognized that a billboard permit itself is individual real property: "We conclude that a billboard permit is a right or privilege appertaining to real property and thus falls within the definition of 'real property' in Wis. Stat. § 70.03."[3] "Because a billboard *403 permit confers a right or privilege to erect and operate a billboard on a designated piece of land and because a permit cannot be transferred to a different location, we conclude a billboard permit falls within the definition of real property." Id., ¶ 64.
¶ 58 Our court of appeals recently reiterated the same legal principle-"billboard permits are real property" and "the permit is the entire property itself." See Clear Channel Outdoor, Inc., 374 Wis. 2d 348, ¶¶ 10, 24, 893 N.W.2d 24. This legal classification of billboard permits as real property distinct from both the billboard itself and the land upon which the structure sits points powerfully to the west-facing billboard permit as the proper denominator.
¶ 59 Under Murr, courts must "give substantial weight to the treatment of the [property], in particular how it is bounded or divided, under state and local law." 137 S.Ct. at 1945. Wisconsin law plainly designates billboard permits as real property, separate and distinct from the land with which they are associated. See Clear Channel Outdoor, Inc., 374 Wis. 2d 348, ¶ 24, 893 N.W.2d 24 (agreeing with the circuit court's conclusion "the permit is the entire property itself."). The west-facing billboard permit is separate and distinct from both the billboard structure and the land the structure inhabits. The City's treatment of the permit as separate property lends further support for designating the west-facing billboard permit as the denominator. The City: (1) requires a separate permit for each side of a billboard, rather than issuing a single permit that covers the billboard structure as a whole; (2) charges fees for each permit (rather than each billboard); and (3) assesses distinct property taxes on each permit. According these considerations substantial weight, as Murr directs, *404 militates in favor of designating the west-facing billboard permit the appropriate denominator.
¶ 60 The second Murr factor directs courts to examine the physical characteristics of the property. 137 S.Ct. at 1945. In Murr, the Supreme Court determined that two separate but contiguous parcels of land together constituted the denominator in the takings analysis. Id. at 1948-50. In this case, there is a single parcel of land, a billboard structure, and two billboard permits. Obviously, the physical characteristics of a billboard permit-unlike the land at issue in Murr-are irrelevant to a takings analysis. Such a permit is intangible; nevertheless, it is valuable and it is what gave the small, irregular-shaped parcel of land adjoining the Beltline Highway its $1.46 million value before the City erected the bridge. After the City built the bridge, the land parcel's value plummeted fifty percent. The west-facing permit lost its entire worth, while the unaffected east-facing permit retained its full value.
¶ 61 Each permit's value depends entirely on prospective advertisers' willingness to rent the permitted billboard. In this regard, the physical characteristics of the billboard structure become relevant. City ordinance prohibits altering the structure *674 in any manner that would restore the permit's value. However, in order to ameliorate the obstruction caused by the City's construction of the bridge, the billboard structure would need to move or be heightened. This is impossible because a City ordinance bans relocating, enlarging, repositioning, or raising in height any legal non-conforming sign. See Madison, Wis., Gen. Ordinance § 31.05; see also Adams Outdoor Advert. Ltd. P'ship v. City of Madison, No. 2016AP537, unpublished slip op., ¶ 2, 377 Wis. 2d 728, 2017 WL 3085476 (Wis. Ct. App. July 20, 2017) (per curiam) ("Adams' billboard is a legal non-conforming use, which means *405 that Adams cannot change its height or location."). As a result, Adams Outdoor is left with a small, half-acre of irregularly-shaped land adjoining the Beltline Highway, on which sits one rentable sign, the value of which is half what it was when the land enjoyed two rentable signs. The physical characteristics of this parcel suggest its only valuable use is to anchor signage; otherwise, its value would not be so precisely tied to the two signs posted there.
¶ 62 The City argues that Zealy, 201 Wis. 2d at 365, 548 N.W.2d 528, and Randall v. City of Milwaukee, 212 Wis. 374, 249 N.W. 73 (1933), govern the outcome in this case. But the properties in both Zealy and Randall were solely physical land parcels and neither case dealt with the complexities of a combination of land with other real property like the billboard permits we consider in this case. The status of the billboard permit as separate, standalone real property distinguishes this case from both Zealy and Randall. In Zealy, the property owner was farming 10.4 acres of a single piece of contiguous, undeveloped land but anticipating residential use in the future. 201 Wis. 2d at 369-70, 548 N.W.2d 528. The City rezoned 8.2 acres from residential to conservancy use. Id. at 370-71, 548 N.W.2d 528. This zoning change did not impair the property owner's ability to continue the existing farming use, but it did preclude the property owner from developing 8.2 of the 10.4 acres into residential property. Id. The Zealy court held this was not a taking because (1) the land was one contiguous property-"part of a single purchase"-that should not be divided into segments; and (2) looking at the property as a whole, the rezoning did not deprive Zealy of "all or substantially all of the use of his land"-Zealy retained beneficial and substantial uses for his property, including "its historical use, farming." Id. at 378-80, 548 N.W.2d 528.
*406 ¶ 63 In contrast, the affected property of Adams Outdoor is not a single, contiguous plot of land acquired in a single purchase and Adams Outdoor does not wish to change the nature of its use of the property in the future. Rather, Adams Outdoor owns several distinct units of property it desires to use in exactly the same manner it had always used the property, until the City materially interfered. Although the west-facing permit is connected in a sense to the other property, it is nonetheless treated as a distinct unit of individual real property under the law. Unlike Zealy, in which the property owner's use was unchanged by the rezoning, the bridge altogether extinguished Adams Outdoor's use of the west-facing billboard permit, thereby denying Adams Outdoor all economically viable use of not merely a segment of its property but the whole thing; no beneficial use of the west-facing permit remains.
¶ 64 Like Zealy, Randall also involved an undeveloped piece of contiguous land. The City of Milwaukee placed a pedestrian shelter on the sidewalk in front of part of the property owners' land, which abutted the street. Randall, 212 Wis. at 376, 249 N.W. 73. The Randall court decided the shelter did not cause a taking of the owners' property because the shelter only *675 "somewhat obstruct[ed] or interfere[d] with ingress and egress, and the view to and from their land" to the street. Id. at 382, 249 N.W. 73. The Randall court suggested this "impairment" could result in the landowner collecting consequential damages from the City under Wis. Stat. § 80.47, but concluded the act was not a taking. Id. at 383-84, 249 N.W. 73. Like Zealy, Randall does not control this case because the City of Milwaukee merely impaired the property owners' use of the single, contiguous parcel of land whereas in this case the City of Madison extinguished all use of the separate and distinct unit of real *407 property owned by Adams Outdoor.[4] Neither Zealy nor Randall compels us to artificially meld the half-acre of land, the billboard, and the two permits into a single piece of property.
¶ 65 The third Murr factor examines "the value of the property under the challenged [governmental action], with special attention to the effect of burdened land on the value of other holdings." 137 S.Ct. at 1946. The west-facing billboard permit possessed significant value before the bridge was constructed. Its substantial value rested in the right to erect and maintain a billboard that the permit authorized. This is evident from the appraised value of the plot of land upon which the billboard sits. When both the west-facing billboard permit and the east-facing permit could be beneficially used, the land enjoyed an appraised value of $1.46 million, but when only one of the permits could be beneficially used, the land's appraised value declined to $720,000. This drastic diminution in value indicates the west-facing billboard permit's value after the erection of the bridge is zero. In effect, the City's construction of the bridge constructively revoked the permit by abolishing Adams Outdoor's ability to employ any economically beneficial use of its west-facing billboard permit. The third Murr factor also supports designating the permit as the appropriate denominator.
¶ 66 Based on Wisconsin case law recognizing the billboard permit as the "entire" real property in and of itself, the permit for the west-facing sign is the appropriate denominator for assessing whether a constructive *408 taking occurred, a conclusion that is bolstered by the Murr factors.
B
¶ 67 Having decided the proper denominator, the remaining question is whether the City's construction of the bridge constituted a compensable taking of Adams Outdoor's west-facing billboard permit. A compensable taking occurs if the City's action denied Adams Outdoor of all or substantially all "economically beneficial or productive use" of its property. See Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) ; see also Dolan v. City of Tigard, 512 U.S. 374, 385, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) ; Zinn v. State, 112 Wis. 2d 417, 424, 334 N.W.2d 67 (1983) (taking occurs "when the government restriction placed on the property 'practically or substantially renders the property useless for all reasonable purposes' " (quoted source omitted) ).
¶ 68 The only economically beneficial or productive use of the west-facing billboard permit is renting the west-facing billboard to advertisers. There is no question that before the bridge existed, this is exactly what Adams Outdoor did. The income from *676 using the west-facing billboard permit was $8,000 per month or $96,000 per year. Adams Outdoor asserts this use of the west-facing billboard permit no longer exists. Advertisers will not want to rent the west-facing billboard, rendering its corresponding permit useless.
¶ 69 The City argues that the property retains beneficial use because Adams Outdoor can still profitably use its east-facing sign, and the law, according to the City, will not divide property into separate segments. The City's argument fails because the law recognizes each permit as a distinct, standalone unit of real property. The west-facing billboard permit is not a "piece" of the pie. It is the whole pie.
*409 ¶ 70 This case is more akin to Maxey v. Redevelopment Authority, 94 Wis. 2d 375, 288 N.W.2d 794 (1980), than the cases the City cites involving single, contiguous plots of land. Maxey involved a redevelopment project that "placed a moratorium on the issuance of theater licenses in the central business section of [the city]" where Maxey operated a theater as a long-term leaseholder in the Baker Block Building. Id. at 385, 288 N.W.2d 794. As a result, Maxey could not renew his theater license, thereby "eliminat[ing] the economic value of the theater" and "substantially depriv[ing] [Maxey] of his economic interest in the property." Id. at 391, 288 N.W.2d 794. The Maxey court held that "where rental income was Maxey's only significant interest in the property, all, or substantially all, of the beneficial use of his property was taken from him." Id. at 392, 288 N.W.2d 794. So too here.
¶ 71 Adams Outdoor's property interest resembles the property interest in Maxey, not the single, contiguous piece of real property in Randall and Zealy. Maxey involved property with distinct and separate units: the lessor's interest as the owner of the building, and Maxey's interest as the owner of both a 99-year lease and an annually-renewable theatre license from the City. Id. at 384, 391, 400-01, 288 N.W.2d 794. The Maxey court used the theatre license as the denominator, correctly deciding that without the license to operate the theatre, the lease was worthless. Id. at 391, 288 N.W.2d 794. The building had been constructed to be a theater, and that was its existing use. Id. The City's denial of the license constituted a taking because it deprived Maxey of all economic use of the property. Id. at 391-92, 288 N.W.2d 794.
¶ 72 The same is true for Adams Outdoor. It owns the west-facing billboard permit, whose sole economic benefit derives from renting the west-facing billboard to advertisers. The bridge deprives Adams Outdoor of economic use of the west-facing billboard permit, defeating *410 Adams Outdoor's investment-backed expectations developed over years of consistent, unhindered use. The west-facing billboard permit is rendered useless as a result of the City's constructive taking of the west-facing billboard permit and the consequent deprivation of rental income. The City's action is a compensable taking. Id. at 392, 288 N.W.2d 794 (citing Luber v. Milwaukee Cty., 47 Wis. 2d 271, 278, 177 N.W.2d 380 (1970) ).
C
¶ 73 Takings law, properly applied, prevents unfair burdens from being imposed on a single property owner for a government project that will benefit the public as a whole. Murr, 137 S.Ct. at 1943.
In adjudicating regulatory takings cases a proper balancing of these principles requires a careful inquiry informed by the specifics of the case. In all instances, the analysis must be driven "by the purpose of the Takings Clause, which is to prevent the government from 'forcing *677 some people alone to bear public burdens which, in all fairness and justice should be borne by the public as a whole.' "
Id. (quoting Palazzolo v. Rhode Island, 533 U.S. 606, 617-18, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) ). It is undisputed that the bridge over the Beltline Highway benefits the public as a whole. But, this public benefit forced Adams Outdoor to bear a heavy burden-the destruction of all economically viable use of its property. Moreover, Adams Outdoor cannot take any steps to mitigate its losses because its legal but non-conforming use status precludes Adams Outdoor from reconfiguring or moving the structure in order to restore the rentability of the west-facing billboard. The bridge completely deprived Adams Outdoor of the only economically viable use (and therefore the entire value) of its west-facing billboard permit. As the owner of real property whose value the City wholly *411 eliminated, Adams Outdoor is entitled to fair and just compensation.
* * *
¶ 74 A lawful mechanism exists for invading the "sacred and inviolable rights of private property" as Blackstone outlined centuries ago:
So great moreover is the regard of the law for private property, that it will not authorize the least violation of it; no, not even for the general good of the whole community .... In vain may it be urged, that the good of the individual ought to yield to that of the community; for it would be dangerous to allow any private man ... to be the judge of this common good .... In this ... the legislature alone can ... interpose, and compel the individual to acquiesce. But how does it interpose and compel? Not by absolutely stripping the subject of his property in an arbitrary manner; but by giving him a full indemnification and equivalent for the injury thereby sustained. The public is now considered as an individual, treating with an individual for an exchange. All that the legislature does is to oblige the owner to alienate his possessions for a reasonable price.
1 William Blackstone, Commentaries on the Laws of England 78-80 (George Chase ed., 4th ed. 1938) (1765). The City of Madison's construction of the bridge effected a compensable taking of Adams Outdoor's permit for the west-facing billboard because the City eliminated the only economically viable use of that permit.[5] While the City possessed the power to do this, it may not impose the economic burden of the *412 public bridge on one property owner. I would reverse and remand for a determination as to the proper compensation owed for this constructive taking.
¶ 75 The majority permits the unconstitutional taking of private property without just compensation, thereby threatening the freedom of all private property owners in Wisconsin. I respectfully dissent.[6]
*678 *413 ¶ 76 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK and Justice DANIEL KELLY join this dissent.

Because a billboard permit is real property, the permit holder is referred to as the permit owner. See, e.g., Clear Channel Outdoor, Inc. v. City of Milwaukee, 2017 WI App 15, ¶ 13, 374 Wis. 2d 348, 893 N.W.2d 24, review denied, 2017 WI 81, 376 Wis. 2d 641, 899 N.W.2d 704.

The billboard structure itself is not real property; rather, it is personal property assessed separately from the permit and the land. Adams Outdoor Advert., Ltd. v. City of Madison, 2006 WI 104, ¶¶ 31, 33, 294 Wis. 2d 441, 717 N.W.2d 803 ; Clear Channel Outdoor, Inc., 374 Wis. 2d 348, ¶¶ 6-10, 893 N.W.2d 24.

Wisconsin Stat. § 70.03 defines real property as "not only the land itself but ... all fixtures and rights and privileges appertaining thereto[.]"

Significantly, Randall does acknowledge that "an owner of land abutting on a street has the right" of, among other things, "view"; the right to view is "subject to such public street use and purposes as the location of the street requires." Randall v. City of Milwaukee, 212 Wis. 374, 374, 249 N.W. 73 (1933).

I acknowledge that the City maintains it conceded that the bridge completely obscured the west-facing billboard only for purposes of this appeal. The City asserts that if this court determines a taking occurred, the "completely obscured" stipulation no longer applies and the circuit court would need to find what percentage of the west-facing billboard has actually been obscured.

The majority objects to addressing the permit as the denominator because this argument was raised in the amicus curiae brief, the permit is not in the record, the City's attorney believes there is not a separate permit for each side of the billboard, and forfeiture should apply. See majority op., ¶ 24 n.8. Amicus curiae, or "friend of the court" briefs, may be filed only with permission of this court. See Wis. Stat. § 809.19(7). An effective amicus brief " 'bring[s] something new and interesting to the case.' This might be better research, more cogent analysis or a more convincing demonstration of the impact of the decision on the public at large." Randy S. Parlee, A Primer on Amicus Curiae Briefs, 62 Wis. Law. 15 (Nov. 1989) (quoted source omitted). The amicus brief did just that in this case. The amicus argument that the permit was the real property at issue dominated the first half of the oral argument, generating multiple questions and discussion on the topic-from three justices. The majority quotes an excerpt from oral argument making it appear that Adams Outdoor's lawyer forfeited the issue. But the excerpt does not give the whole story. The majority omits the clarification Adams Outdoor's lawyer made immediately after answering "Not-that's correct, Your Honor, not specifically":
Chief Justice: So, you're not claiming that the income you earn by based on the permit, you're not claiming that's a concern for us, right?
Adams Outdoor's lawyer: That is a concern, your Honor-
Chief Justice: Alright, that's different than your answer to Justice [A.W.] Bradley's question.
Adams Outdoor's lawyer: Maybe I misunderstood the question. Certainly, in terms of measuring the damages or impact or the value of that interest, whether you identify the value as flowing from the permit in the display of that sign or you just recognize that sign exists ... And it will generate a certain amount of revenue through the display of advertising. That number, tied to the permit or tied to the sign face will be the same issue.
In fact, Adams Outdoor's lawyer told the court at oral argument: "The permit to display the billboard is certainly a separate property interest that could be the subject of takings analysis in this case. I don't disagree with the amicus brief in that respect." And, he represented: "In fact, the city treats both sign faces as separate economic units by virtue of the fact that they have licensed both sign faces separately. And that's a critical piece of our analysis here. Certainly that license could stand for its own separate property interest that could be the subject of takings analysis." He asserted "I think we do have a property interest in the permit ...."
The City's attorney did not speak as definitively in responding that he merely believes Adams Outdoor's lawyer is wrong about the City issuing a separate permit for both the east- and west-facing billboards. Both the amicus lawyers and the lawyer representing Adams Outdoor unequivocally represented that the City issued two permits. Indeed, applicable law requires it. Far from being an "unsubstantiated factual allegation" as the majority characterizes it, majority op., ¶ 24 n.8, the existence of two permits is required by the City's own ordinance, Madison, Wis., Gen. Ordinance § 31.041(3) (2015).
As for forfeiture, it "is a rule of judicial administration, and as such, a reviewing court has the inherent authority to disregard a [forfeiture] and address the merits of an unpreserved issue in exceptional cases." Village of Trempealeau v. Mikrut, 2004 WI 79, ¶ 17, 273 Wis. 2d 76, 681 N.W.2d 190. "[C]ourts have authority to ignore the [forfeiture]." State v. Erickson, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) ; see also Wis. Stat. § 751.06 (allowing discretionary review of issue not raised in circuit court). This court should not ignore a dispositive issue of law.